## CARD v. COMMERCIAL CASUALTY INS. CO.—95 S. W. (2d) 1281.

Middle Section. January 18, 1936.

Petition for Certiorari denied by Supreme Court, July 3, 1936.

Bailey & Davies and Walker & Hooker, all of Nashville, for plaintiff in error administratrix.

W. P. Cooper and White & Howard, all of Nashville, for defendant in error insurance company.

CROWNOVER, J. This was a suit to recover on an automobile liability policy issued by said insurance company to "R. R. Ogilvie & Co. and/or R. R. Ogilvie," it being averred that Robert Lasseter, who wrongfully killed plaintiff's intestate by the negligent operation of the automobile insured under said policy, and against whom judgment had been rendered, was an "additional assured" under said policy; that plaintiff had sued Robert Lasseter and had obtained a judgment for $10,000, on which an execution had been issued and returned nulla bona, as Robert Lasseter was insolvent, and this suit was brought against the insurance company on the insolvency clause of the policy.

The defendant pleaded the general issue of not guilty, nil debet, non assumpsit, and filed a special plea that the suit was not brought within two years, the time within which suits on the policy must be brought, and was therefore barred by said contract limitation of time.

The case was tried by the judge and a jury. At the close of the plaintiff's evidence the defendant moved the court for a directed verdict, which motion was sustained by the court, and the jury was directed to return a verdict for defendant, which was accord-

ingly done, and judgment was entered dismissing the plaintiff's action.

Motion for a new trial having been overruled, the plaintiff appealed in error to this court, and has assigned as error the court's action in peremptorily instructing the jury to return a verdict in favor of the defendant.

The facts proper to be stated are as follows:

On February 1, 1931, the Commercial Casualty Insurance Company issued as automobile liability insurance policy to "R. R. Ogilvie & Company and/or R. R. Ogilvie." The policy covered ten automobiles, one of which was described as a Willys Knight coach, motor No. 79721.

The provisions of the policy as to "Named Assured" and "Additional Assured" are as follows:

"A—Assured and Named Assured. The unqualified term 'Assured' wherever used in this policy shall include in each instance the Named Assured and any other person, firm or corporation coming within the provisions and conditions of Agreement 4, but the qualified term 'Named Assured' shall apply only to Assured named and described as such in the Warranties."

"(4) Additional Assured: That the terms and conditions of this policy are so extended as to be available, in the same manner and under the same conditions as they are available to the Named Assured, to any person or persons while riding in or legally operating any of the automobiles described in the Warranties, and to any person, firm or corporation legally responsible for the operation thereof, provided such use or operation is with the permission of the Named Assured, or, if the Named Assured is an individual, with the permission of an adult member of the Named Assured's household other than a chauffeur or a domestic servant except that the terms and conditions of this policy shall not be available to a public automobile garage, automobile repair shop, automobile sales agency, automobile service station and the agents or employees thereof."

Section G of the policy provides:

"G—Assured's Right of Recovery. No action shall lie against the Company to recover for any loss and/or expense covered by this policy, arising or resulting from claims upon the Assured for damages, unless it shall be brought by the Assured for loss and/or expense actually sustained and paid in money by him after actual trial of the issue, nor unless such action is brought within two years after payment of such loss and/or expense; nor for any other loss or damage covered by this policy unless action is brought within two years after the occurrence causing the loss or damage."

R. R. Ogilvie is an individual engaged in the business of selling

lumber, builders' supplies, and coal, under the trade-name of R. R. Ogilvie & Co. Rollin Lasseter was manager of the business.

Robert Lasseter is the brother of Rollin Lasseter. At the time of this accident he made his home with Rollin Lasseter, and was not engaged in business of any kind on account of his health.

R. R. Ogilvie was the owner of the Willys Knight automobile involved in this action. He permitted Rollin Lasseter to use the car as he wished, for business or pleasure. Rollin Lasseter testified that Ogilvie turned the car over to him, saying: "Here is a car to be used by you, use it just as if it were your own."

On May 18, 1931, Rollin Lasseter instructed his brother, Robert Lasseter, to drive Sam T. Card to his home in this automobile. Card had been surveying a lot belonging to Mrs. Rollin Lasseter, on which she was preparing to build a house. On the way to Card's home this automobile collided with another, in which collision Card was killed.

On July 21, 1931, Mrs. Mary Sue Card, administratrix of the estate of Sam T. Card, deceased, filed suit in the circuit court of Davidson county against Robert Lasseter and others to recover damages for his wrongful death. Judgment was rendered in her favor against Robert Lasseter for $10,000.

After this judgment was rendered, Robert Lasseter's attorney notified the insurance company of the accident, suit, and judgment, and that appeal had not been perfected. It appears that this was the first notice the insurance company had been given of said accident and suit.

The judgment was not appealed from. Execution was issued on July 7, 1934, and was returned nulla bona on the same date. The judgment has never been paid.

On October 12, 1934, the administratrix filed this suit against the insurance company.

The plaintiff contends that Robert Lasseter was legally operating the automobile in so far as his right to operate same was concerned, and is insured under said policy, under section 4 of the policy, as additional assured. It is contended that Robert Lasseter had the implied permission of Ogilvie to drive this car; and that Rollin Lasseter had full power to permit him to use this car, and gave him such permission.

It is the defendant's contention that the directed verdict was properly granted for three reasons, as follows: (1) The evidence discloses that the particular automobile which was involved in the accident was not covered by the insurance policy; (2) that the said Robert Lasseter was not covered by the "additional assured clause" of the policy for the reason that he was not operating the automobile with the "permission of the named assured" as provided by

the policy; and (3) this suit was not brought within two years "after the occurrence causing the loss or damage," as provided in the policy.

1. We think there is nothing in the contention of the defendant that the automobile involved in the accident was not covered by the insurance policy introduced in this suit. It is true the policy insures a Willys Knight automobile with motor No. 79721, and one Dan Lynch testified that the car driven at the time of the collision was No. 79921, but all the other testimony shows that the car insured was the car that was in the collision, and Ogilvie owned no other Willys Knight automobile.

2. It is not shown by any witness that Ogilvie ever gave permission to Robert Lasseter to use the car. It is not shown that Ogilvie ever knew that he had driven it. Nobody undertook to testify along this line but the two Lasseters, and they both said that as far as they knew Ogilvie did not know that Robert Lasseter had ever driven it. There is, therefore, no proof to establish an implied permission. There being no other evidence on the question of implied permission, the court did not err in taking the case from the jury.

Rollin Lasseter was the "additional assured" under this policy. His permission to another to drive it would be beyond the policy. The fact that the automobile was delivered to Rollin Lasseter for his use did not imply that he could allow an unknown and unapproved third person to drive it. American Automobile Insurance Co. v. Jones, 163 Tenn., 605, 45 S. W. (2d), 52.

In the case of American Automobile Insurance Co. v. Jones, supra, an employee of the company allowed a stranger to the company to drive the car without the knowledge of the company, and the court held that the policy would not be available to him.

When the named assured grants permission to a certain person to drive the automobile, then that person becomes an "additional assured" within the terms of the policy. Merely because the driver deviates from the intended route, or uses the car for a purpose not intended by the owner, does not remove him from the coverage of the insurance policy. The insurance company is not concerned as to where or for what purpose the car is being driven. And our Supreme Court has held that if a person is given "permission" or "consent" by the named assured to drive the car, then the deviation from the route or purpose by the driver does not remove him from the coverage of the "additional assured" clause. Stovall v. New York Indemnity Co., 157 Tenn., 301, 8 S. W. (2d), 473, 72 A. L. R., 1368; American Auto Ins. Co. v. Jones, supra.

The determinative question is, Did the named assured expressly

or impliedly give his permission for the person to drive the car? If he did not, then the company is not liable.

The "additional assured" clause in effect gives the named assured the discretionary power to select "additional assureds." This discretionary power cannot be delegated to another. This proposition is clearly stated by our Supreme Court, as follows:

"But here we have more, namely, a material departure, not only in place and purpose, but in use. Delivered to Wilkes for his use does not imply consent to use—in the essential sense of operation, handling, driving by some unknown and unapproved third person. In one sense, it is true, it continued to be devoted to the use of Wilkes, but it was not he who was using it in the sense of controlling, manipulating, guiding it—and a restriction on its use in this sense would appear to be called for by the nature of the obligation created by the indemnity contract. The element of risk underlies all forms of insurance. The insurer has a right to assume that the risk he undertakes shall not be enlarged. The extent of the risk is the basis of all tabulated premium charges. And this is one of the forms of insurance, of which fire policies are an illustration, wherein there is a recognized personal element resting on standards of character, responsibility, and competence. In this class of cases, theoretically, certainly, the insurer looks first to the standing and reputation of the named assured, and trusts him to select and delegate to responsible employees, only, the 'use' or operation—controlling, guiding, driving—of its cars covered, and on this theory agrees to cover such 'additional assured.' No power passes, in the contemplation of the parties, to such an agent to delegate in turn this responsibility. Such a diversion of use can hardly be said to be impliedly with the consent of the named assured, or within the contemplation of the insurer. It is a departure too radical and foreign, and involves an unjustifiable extension of the risk covered by the contract.

"It is to be borne in mind that the ruling in the Stovall Case involves no such enlarging of the risk. A mere diversion of route or place of use suggests no increase of hazard. One is as liable to have an accident on one route or way as on another. But a change of driving, operating control, injects a distinctly new element." American Auto Ins. Co. v. Jones, 163 Tenn., 605, at pages 608, 609, 45 S. W. (2d), 52, 53.

The Tennessee Supreme Court has definitely construed the "additional assured" clause to mean that the named assured is an agent of the insurance company with power to select the persons who may drive or "use" the automobile, and on this theory it agrees to cover such persons who are thus selected and approved by the car owner. The insurer looks first to the standing and reputation

of the named assured, and trusts his discretion in selecting other persons to operate the car. Also, the named assured must be the owner of the car, and he thus has a keen interest in the safety of his car to prevent it from being damaged. It is on this theory that the named assured and the adult members of his household are granted a discretion in "permitting" other persons to drive the car and be covered by the policy. "No power passes, in the contemplation of the parties, to such an agent to delegate in turn this responsibility." Under this decision, the named assured has no power to delegate his discretion; he must personally approve and give "permission" in order to bring the other person within the coverage of the policy. Any attempt by the named assured to place the car with another person, with broad authority to permit any one to operate the car, would be unavailing so far as the insurance policy is concerned. American Auto Ins. Co. v. Jones, supra.

When the car is being driven by a person without the actual permission (either express or implied) of the named assured, then the driver is not an additional assured. Even if the person is present in the car who had permission to use it (but is not driving), there is no coverage under the policy. In that case the person who was given permission is not an "additional assured," for the reason that the named assured must personally exercise his discretion in selecting the driver. Permission to use means permission to operate.

The cases hold that where the named assured permits the car to be used by another, this does not authorize that person to select another driver and bring the third party within the coverage of the additional assured clause. American Auto Ins. Co. v. Jones, supra; Trotter v. Union Indemnity Co. (D. C.), 33 F. (2d), 363; Id. (C. C. A.), 35 F. (2d), 104; Johnson v. O'Lalor, 279 Mass., 10, 180 N. E., 525.

It is not necessary that the named assured signify his "permission" in any particular manner. It is sufficient if he signifies the permission by a course of conduct, and under some circumstances mere silence may be sufficient. In this sense "implied permission" from the named assured would be sufficient to bring a driver within the additional assured clause.

But such "implied permission" must be the act or conduct of the named assured. It must amount to an intended selection of the person to operate the car. No implied permission can arise merely because a man obtained possession of the car, without the knowledge of the named assured, regardless of what permission was given by other persons. Of course, the named assured could transmit his permission through an agent or in any other manner. The essential point is whether the named assured exercises his personal discretion and grants his own permission to the particular person.

The insurance policy extends this right only to the named assured and to adult members of his household. "No power passes, in the contemplation of the parties, to such an agent to delegate in turn this responsibility." Even if the named assured expressly authorized such person to permit other unnamed and unselected persons to drive the car, this would be unavailing as against the insurance company. Certainly such a right cannot be created by implication. "Such a diversion of use can hardly be said to be impliedly within the consent of the named assured, or within the contemplation of the insurer. It is a departure too radical and foreign, and involves an unjustifiable extension of the risk covered by the contract." American Auto Ins. Co. v. Jones, supra.

The above-quoted language was the clear and definite basis of the decision by our Supreme Court in the Jones Case. It is true that in that case the stipulated facts showed that the named assured had expressly prohibited its salesman from permitting any one else to drive the car. The Supreme Court did not base its decision on this fact, but after having properly construed the policy the court remarked that the named assured had acted "consistent with this construction" when it prohibited the salesman from turning the car over to others. In other words, the court merely remarked that the named assured recognized its duty and obligations under the insurance policy, as properly construed. This fact did not enter into the decision of the case, but the court merely remarked as follows:

"Consistently with this construction, in the instant case the stipulation shows that this particular misuse was expuressly prohibited; that it was against the instructions of this salesman 'for him to permit any one to drive the car.' " American Auto Ins. Co. v. Jones, supra.

In Bixby v. Moor, 51 N. H., 402, 403, the court said:

" 'In such cases it is sometimes said that "the law implies an agreement." . . . Strictly speaking, this is inaccurate. The agreement, though not fully expressed in words, is, nevertheless, a genuine agreement of the parties; it is "implied" only in this, that it is to be inferred from the acts or conduct of the parties instead of from their spoken words; "the engagement is signified by conduct instead of words." But acts intended to lead to a certain inference may "express a promise as well as words would have done." ' "

"Thus it is well settled by these and many other authorities that the implied consent necessary under the terms of the policy must arise by way of inference or deduction from the acts and conduct of not only one of the parties, but of both the parties, and in the instant case we find no evidence of such a legal status in the record.

On the contrary, we find with regard to the testimony of Stein and Gordon, the driver and owner, respectively, that the use of the car for uses other than those named in the policy was not known in any way to Gordon, and thus in addition to the failure of any inference arising in the record as to implied consent we have the negation of both of these important witnesses to the challenge of consent. Thus it appears from the record that the lower court made no mistake in sustaining the motion to direct a verdict, for the reason that the record not only warranted, but compelled, such judicial action. Holding these views; the judgment of the lower court is hereby affirmed.'' Kazdan v. Stein, 26 Ohio App., 455, 160 N. E., 506, 507.

The record discloses that the said automobile had been driven by several other persons, and it is insisted that Ogilvie knew about the other persons driving the automobile. On this theory the plaintiff insists that an implied permission arises. But it was clearly shown that the several other persons who had driven the automobile were employees of Ogilvie, and they were driving it in connection with his business. Of course, when Ogilvie employed a man and put the man in a position where it might be necessary for him to drive the automobile at various times, this might furnish a fair basis for an inference that Ogilvie had given his permission for that particular man to drive the car. But a circumstance of this kind could have no bearing on the question as to whether Robert Lasseter was permitted to drive the car by Ogilvie.

But the record is clear that Ogilvie never at any time knew that Robert Lasseter had ever driven the automobile until after the accident occurred. He was not an employee of Ogilvie, and there can be no basis for an inference of an implied permission on the part of Ogilvie. On the other hand, the record contains evidence of strong circumstances which would rebut any inference of implied permission. Robert Lasseter had been discharged by Ogilvie several years before the accident and relations between them were unpleasant.

No presumption will be indulged under Acts of 1921 (chapter 162, sections 1, 2) and 1923 (chapter 59) (Code, sections 2701 and 2702) in the face of proven facts to the contrary. Del Vecchio v. Bowers, 296 U. S., 280, 56 S. Ct., 190, 80 L. Ed., —; Wright v. Bridges, 16 Tenn. App., 576, 580, 65 S. W. (2d), 265.

3. The policy expressly provides that no action shall lie against the company arising from claims upon the assured for damages, unless such action is brought within two years after the occurrence causing the loss or damage. Such a contractual limitation is valid. Humpston v. State Mut. Life Assur. Co., 148 Tenn., 439, 468, 256 S. W., 438, 31 A. L. R., 78; Guthrie v. Indemnity Ass'n, 101 Tenn., 643, 49 S. W., 829; Hale & Sons v. Stone Eng. Co., 14

Tenn. App., 461, 467; Riddlesbarger v. Hartford Fire Insurance Co., 7 Wall. (74 U. S.), 386, 19 L. Ed., 257, 258.

██ ██ The contract limitations contain in insurance policies, providing the time within which suit must be brought, are valid unless prohibited by statute. It is purely a question of contract, and the injured party can recover only under the terms and conditions of the contract. Johnson v. Life & Cas. Ins. Co., 168 Tenn., 358, 79 S. W. (2d), 39; Guthrie v. Indemnity Ass'n, supra.

More than two years had elapsed since the accident when this suit was brought; therefore, the plaintiff could not recover.

It results that the assignment of error is overruled and the judgment of the lower court dismissing the suit is affirmed. The costs of the cause including the cost of the appeal are adjudged against the administratrix.

Faw, P. J., and DeWitt, J., concur.