**216**

Raymond L. YOUNG, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Bloomington, Illinois, Defendant.

Raymond L. YOUNG, Administrator of the Estate of Mary E. Young, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Bloomington, Illinois, Defendant.

Brenda Joyce YOUNG, an infant who sues by her father and next friend, Raymond L. Young, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Bloomington, Illinois, Defendant.

Civ. A. Nos. 371–373.

United States District Court
W. D. Virginia, Lynchburg Division.

Aug. 13, 1956.

Kizer & Phillips, Lynchburg, Va., for plaintiffs.

Henry M. Sackett, Jr., Lynchburg, Va., and J. B. Browder, Richmond, Va., for defendant.

BARKSDALE, District Judge.

This action having been tried upon the facts by the Court without a jury, the Court doth hereby find the facts specially and states separately its conclusions of law thereon, and directs the entry of the appropriate judgment, as follows:

Findings of Fact.

Plaintiff, Raymond L. Young, heretofore, in three actions in this court, (1) in his own right, (2) as administrator of the estate of his wife, Mary E. Young, and (3) as father and next friend of his infant daughter Brenda Joyce Young, on June 9, 1955, recovered judgments against the administrator of Andrew Blakeley Massie, for personal injuries sustained by himself and daughter, and for the death of his wife, the injuries and death having resulted from a collision which occurred a few miles east of Lynchburg on Route 460 on September 5, 1954. The automobile driven by plaintiff, Young, while traveling west, collided with an automobile which was the property of C. Wythe Edwards and was being driven by Andrew Blakeley Massie, who was also killed as a result of the collision. A public liability insur-

ance policy issued by defendant, State Farm Mutual Insurance Company, to Edwards, covering his automobile which was involved in this collision, was in force at the time. Having denied coverage, defendant, State Farm, made no defense to the actions instituted by Young against the Administrator of Andrew Blakeley Massie on behalf of himself and daughter and as administrator of his wife. Executions on these judgments having been returned unsatisfied, Raymond L. Young, in his own right, as administrator of the estate of Mary E. Young, his wife, and as the father and next friend of his daughter, Brenda Joyce Young, has instituted these three actions in this court against State Farm for the purpose of requiring it to pay these judgments up to the limits of their policy issued to Edwards. Since the three actions involve common questions of law and fact, an order was entered on May 16, 1956, consolidating these three actions pursuant to the provisions of Rule 42(a), Fed.Rules Civ.Proc. 28 U.S. C.A. No one having demanded a jury, the consolidated three actions came on for trial by the court without a jury on July 13, 1956, and at the conclusion of the trial the court, not being fully advised of its judgment, took time to consider. The question involved is whether or not Massie, at the time of the fatal collision, was operating Edwards' automobile with the permission of Edwards. The omnibus, or extended coverage, clause in the policy issued to Edwards by State Farm, so far as it is pertinent, is as follows:

"III. Definition of Insured. With respect to the insurance for bodily injury liability, for property damage liability and for medical payments the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. * * * "

In the summer of 1954, Massie was living in Bristol, and was employed as a salesman by the Bristol Lincoln-Mercury Company. At that time, his wife was living in Portsmouth, Va., and his parents were living in Accomac County on the Eastern Shore of Virginia. Edwards and his family lived in Johnson City, Tennessee, and he was employed as an adjustor for defendant, State Farm, working out of its Bristol office. Each Thursday, Edwards came into the Bristol office of State Farm to report. Massie frequently came to the State Farm office in Bristol for the purpose of obtaining information about prospective purchasers of automobiles and to arrange financing for cars which he sold. In the early summer of 1954, Edwards became acquainted with Massie through seeing him at the State Farm office in Bristol. Edwards owned a secondhand Ford car which he had bought two years before, and as State Farm was providing a car for his use, he decided to sell his own car. Knowing that Massie was an automobile salesman, and believing that he could get a better price for his car by having Massie sell it for him than he could expect to get by selling his car to a used-car dealer, he discussed with Massie the proposition of having Massie sell his car for him on commission. Pursuant to these conversations, on August 5, 1954, Edwards delivered his Ford car to Massie to sell for him, Massie to get a commission, and Edwards to get the net proceeds. It was understood between the two that Massie would drive the car for the purpose of seeking prospects and demonstrating the car to prospective purchasers. Massie was to pay for the necessary oil and gasoline and keep the car clean and in good repair. This was a personal undertaking by Massie, and in no way connected with his employment by the Bristol Lincoln-Mercury Company. In turning the car over to Massie, Edwards told him that he did not want him "gallivanting around" in it or using it for his personal use. It was Edwards' understanding that the car was to be left on

the premises of one Booth, at whose home Massie was living, while Massie was not trying to sell it. Massie did undertake to find prospective purchasers and demonstrate the car to them, including prospects in Saltville and Abingdon. However, without the knowledge of Edwards, he did use the automobile for his personal use to some extent. In August 1954, unknown to Edwards, Massie drove this car through Portsmouth to Accomac County for a visit to his family. While there, he made an effort to sell the car to his father. On his return journey on August 24th, while passing through Lynchburg, Massie was arrested in Lynchburg for giving a bad check, and the Lynchburg police suspected that the car in which he was traveling had been stolen. About 3:00 or 4:00 a. m., on August 24th, a Lynchburg policeman telephoned to Edwards in Johnson City telling him that Massie was in Lynchburg in possession of his car, and inquired whether Massie had his consent to have the car or was it stolen. Edwards replied that if Massie had the car in Lynchburg to sell, it was all right.

On August 24th, later in the day, Edwards went to Bristol for the purpose of taking his car back from Massie, being very much irritated with Massie for taking his car on this long trip, but Massie had not yet returned to Bristol. On Thursday, August 26th, he again went to Bristol intending to take his car back from Massie. Upon finding him, Edwards told Massie that he had put nearly one thousand miles on his car on this long trip and it was not as valuable as it was before the trip. However, Massie explained that he had thought he could sell the car on the Eastern Shore, and asked to keep the car as he had several prospects. Thereupon, Edwards consented for Massie to keep the car, but specifically told him that he was not to take the car out of the Bristol area for any purpose.

On September 2nd, Edwards again saw Massie in Bristol and told him that if he had not sold it by the following Saturday, he was going to take it back, as his wife needed it. Early in the morning of Saturday, September 4th, Massie called Edwards on the telephone and asked him if he was coming over to Bristol that day to take the car back, and Edwards replied that he was. Then Massie began to talk about buying the car himself, and they about agreed on terms, but it was understood that, in order to purchase the car Massie would have to secure a loan on it. It was the understanding that Edwards would come to Bristol early the following week to see whether Massie could make arrangements for the purchase of the car. In this conversation, Massie told Edwards that he was going to Portsmouth that day. Edwards asked how he was going, to which Massie replied that he was going on the bus because he knew Edwards did not want him to drive his car. In this conversation, Edwards expressly forbade Massie to drive his car to Portsmouth, and Massie told Edwards he was not going to do so. Notwithstanding Edwards' express admonition to Massie not to drive his car on the trip to Portsmouth, Massie did so drive it, and some time after midnight, when Massie had reached a point a few miles east of Lynchburg, the fatal collision occurred.

### Conclusions of Law.

As this is a diversity case, applicable state law must be applied, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and as agreed by counsel, the law of the State of Tennessee governs.

Counsel for plaintiff rely heavily on the case of Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 477, 72 A.L.R. 1368. In that case, a wholesale drygoods firm in Memphis purchased an automobile and turned it over to one of its traveling salesmen assigned to a territory in Mississippi, for his use in covering his territory. He was instructed that he should not use the automobile for his own pleasure or private purposes. The salesman traveled in this automobile to Memphis to attend a convention, placed it in a storage garage

there, and delivered his claim check to his salesmanager. Later, he procured the claim check for the purpose of carrying customers in this automobile to a railroad station, and returned the automobile to the garage, but retained the claim check. Later in the day, he again took the automobile out of the garage, drove off, without notifying his superior, for the purpose of visiting a young lady. He was involved in an accident, and it was held that, under the omnibus clause of his employer's insurance policy, he was within the coverage of the policy at the time of the accident. In the course of its opinion, the Supreme Court of Tennessee said:

"It is our opinion that the words, 'providing such use or operation is with the permission of the named insured,' were intended to exclude from the protection of the policy a person who should take the automobile and use it without permission or authority in the first instance. If, however, the automobile covered by the policy is delivered to another for use, with the permission of the owner or insured, his subsequent use of it is with the permission of the insured, within the meaning of the policy, regardless of whether the automobile is driven to a place or for a purpose not within the contemplation of the insured when he parted with possession.

"The facts stated hereinabove bring the driver of the automobile at the time of the accident within the protection of the policy, as herein construed, as an 'additional assured.' His use of the car at the time of the accident followed the delivery of possession to him by his employer, acting through the sales manager."

This case has been widely cited as authority for the proposition that "express permission for a given purpose implies permission for all purposes." It has sometimes been followed, sometimes distinguished, and more frequently rejected. It never found favor in Virginia.

Phoenix Indemnity Co. v. Anderson, 170 Va. 406, 196 S.E. 629; Sordelett v. Mercer, 185 Va. 823, 40 S.E.2d 289.

In Jordan v. Shelby Mutual Plate Glass & Casualty Co., D.C., 51 F.Supp. 240, 243, in referring to the Stovall case, I said:

"However, I am satisfied that this case was wrongly decided, and that the Supreme Court of Appeals of Virginia, in the Phoenix case, disapproved it, as clearly shown by the above quotation from the Phoenix case."

Regardless of what my opinion may be as to the soundness of the Stovall case, it would be my duty to follow it if it cannot be distinguished from the instant case on the facts and is still the law of Tennessee.

It seems to me that it is distinguishable on the facts. In the Stovall case, the automobile was delivered to the salesman to be kept permanently in his exclusive possession until it wore out and was replaced. True, his employer's purpose in delivering the car to him was to enable him to cover his territory for his employer. However, of necessity, the employer must have known that it would be at least occasionally used for the salesman's personal convenience. There was the general instruction to the salesman that he should not use the car for his own pleasure or private purposes, but the particular trip on which the accident occurred was not expressly forbidden. In the instant case, when Edwards delivered his automobile to Massie, it was for the sole and limited purpose of having Massie sell it. Massie not only was not to use the car for his private purposes, but was expressly forbidden to drive it on the trip during the course of which the fatal accident occurred, and promised not to do so.

The Stovall case has never been expressly overruled by the Supreme Court of Tennessee. In Preferred Accident Ins. Co. v. Barker, 104 F.2d 424, the Sixth Circuit followed it. In the case of Foley v. Tennessee Odin Insurance Co.,

193 Tenn. 206, 245 S.W.2d 202, 203, the court said in its opinion that it saw no reason to overrule the Stovall case, and sustained a finding of coverage. However, in the Foley case, it was not necessary to go nearly so far as the court did in the Stovall case, because in the Foley case there was no specification as to how the vehicle should be returned, and the use of the vehicle at the time of the accident "was not specifically forbidden by the owner and assured but was through at least the implied permission of the owner to the driver of the car."

In the cases of Card v. Continental Casualty Ins. Co., 20 Tenn.App. 132, 95 S.W.2d 1281, and American Automobile Insurance Co. v. Jones, 163 Tenn. 605, 45 S.W.2d 52, the courts held that there was no coverage, distinguishing these cases from the Stovall case on the facts.

In the case of Hubbard v. United States Fidelity & Guaranty Co., 192 Tenn. 210, 240 S.W.2d 245, the court held that there was no coverage in the situation where the employee used his employer's motorcycle during business hours on his employer's business, storing it in a garage at night, and on this particular occasion, took it out for his own use at night and became involved in an accident.

In the case of Moore v. Liberty Mutual Insurance Co., 193 Tenn. 519, 246 S.W. 2d 960, 961, an employee of the insured obtained permission to "take the truck out that night for the purpose of hauling a small amount of furniture of his sister-in-law from one point in the city of Nashville to another point in the city, about two miles. * * * The possession of the truck by Simmons was for a definite purpose—to haul furniture from one point to another in the city of Nashville. He had no general custody of the truck and no permission to use it for general purposes." Instead of hauling the furniture, he picked up a friend, drove to another city some thirty miles away, and the wreck ensued. The court held:

"* * * that where one has only limited permission of the own-er to use the car in a specified area for a limited time and particular purpose and does not have general discretion as to the use of the car, then the coverage of the omnibus clause is not extended to his use of the car any place or for a purpose not consented to nor reasonably contemplated by the owner in giving the initial permission."

The court further said:

"The omnibus clause of the insurance policy is simply a contract and is to be governed by the ordinary rules of interpretation of contracts. This being so, it could hardly be said that it was within the contemplation of the parties, conceding that Simmons had permission to use the truck and move the furniture from one place in Nashville to another, that he would go on an entirely different and independent mission thirty miles to the town of Murfreesboro on a mission wholly unconnected with and unrelated to the permission given."

While in this opinion, the court pays lip service to the Stovall case, the actual holding is an application of the Virginia rule. Indeed, the opinion cites with approval the Virginia case of Phoenix Indemnity Co. v. Anderson, supra, and Jordan v. Shelby Mutual Plate Glass & Cas. Co., 4 Cir., 142 F.2d 52, a Virginia case arising in this court, D.C., 51 F.Supp. 240.

I agree with the statement of Judge Miller of the Sixth Circuit in the case of Branch v. United States Fidelity & Guaranty Co., 198 F.2d 1007, 1011:

"In our opinion, the controlling rule of law of Tennessee, as it presently exists, is as expressed in the case of Moore v. Liberty Mutual Ins. Co., supra, its latest ruling on the question, which draws the distinction between general custody of and limited permission to use the insured automobile, rejecting the earlier rule announced in the Stovall case that liability exists where the

original possession of the car was with the permission of the owner, regardless of its unauthorized and unanticipated use thereafter."

In the instant case, Massie had no unlimited general custody of Edwards' automobile. He was given possession of the automobile for the specific and limited purpose of selling it, within the restricted area of the vicinity of Bristol. Although Massie, to a limited extent, put the automobile to his personal use, this was without the knowledge or consent of the owner. When Edwards learned of the one occasion when Massie drove his automobile to the distant city of Portsmouth and beyond, he upbraided Massie and directed him never to take it out of the Bristol area again. These facts would be sufficient to compel me to conclude that the use of Edwards' automobile by Massie at the time of the accident was without the express or implied permission of the owner insured. But in addition, there is the compelling fact that, as to the particular use to which Massie was putting this automobile at the time of the fatal accident which is the basis of this litigation, Edwards specifically forbade Massie to make this trip and Massie assured Edwards that he would not. To deduce "permission" from such a state of facts would require a species of legal legerdemain.

While not directly in point, since the court was there dealing with the law of South Carolina, Judge Soper's opinion in the case of Continental Casualty Co. v. Padgett, 4 Cir., 219 F.2d 133, is interesting and illuminating.

It follows that I conclude as a matter of law that the actual use of Edwards' automobile by Massie at the time of the fatal collision was not with his (Edwards') permission.

An order will therefore be entered dismissing this consolidated action at the costs of the plaintiffs.