IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 24, 2002 Session

## KELLY DEAN and LARA LYNN BRISCO v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA

**Direct Appeal from the Circuit Court for Sullivan County**
**No. C33926(L)     Hon. Richard E. Ladd, Circuit Judge**

**FILED AUGUST 5, 2002**

**No. E2001-02311-COA-R3-CV**

In this declaratory judgment action, the Trial Court held operation of the company's vehicle by the wife of the employee was covered under company's insurance policy.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

J. Eddie Lauderback and Bradley E. Griffith, Johnson City, Tennessee, for Appellant.

Jonathan R. Bunn, Gulf Shores, Alabama and David S. Bunn, Norfolk, Virginia, for Appellee, Kelly Dean.

Mark D. Harris, Kingsport, Tennessee, for Appellee, Lara Lynn Brisco.

**OPINION**

In this declaratory judgment action, the Trial Court ruled that Lara Lynn Brisco, who was driving a Chevrolet Suburban leased to her husband's employer, Merico Abatement Contractors, Inc., was a permissive user of a motor vehicle at the time of the accident which resulted in personal injuries to a passenger.  Defendant insurance company has appealed.

At the conclusion of the trial, the Trial Court ruled that Lara Lynn Brisco was a permissive user of the vehicle at the time of the accident, and found:

. . . I find that her husband, Travis Brisco, did know of the company policy and that there was a company policy in effect at that time that no one was to drive a company vehicle without going through the procedure. However, I find that under the special facts of this case that Mr. Brisco came to Kingsport and was using his own personal vehicle in the business of the company and being reimbursed, and due to the nature of the vehicle, a pickup truck, and the necessity of using it other than strictly in the business of doing the work, they had a different type vehicle to carry passengers, and that this company vehicle replaced his personal vehicle, that irregardless to company policy I find that the company allowed him to use the Suburban as a personal vehicle. I do not agree with the testimony of Mr. Merritt (Brisco's supervisor) that he repeatedly told Mr. Brisco otherwise. I find Mr. Brisco to be a truthful person. . . . As to whether they knew Mrs. Brisco had driven the company vehicle, Mr. & Mrs. Brisco both testified that Mr. Merritt saw her drive the vehicle. Mr. Merritt was very careful in the wording of his answer to the question. He did not say she did not drive it. . . . I find that through a course of conduct Mr. Brisco followed the company policy on the trucks that were used directly in the business, that the company allowed him to use the red Suburban pretty much as a personal vehicle similar to the one it replaced, and that they were on business up there from a marketing standpoint at the softball tournament. . . . But due to the fact that he [Mr. Brisco] gave her express permission and he was present in the vehicle . . . in other words, he still had control of the vehicle as a permissive user . . . she was just filling his shoes as an authorized permissive user at the time of the accident. And I find those two servient points, the fact that this vehicle replaced a personal vehicle and the fact that he was present in the vehicle at the time of the accident and was in control of the vehicle, created a situation where Mrs. Brisco was a permissive user under the policy in question.

We review the Trial Court's findings of fact with a presumption of correctness, unless the evidence preponderates otherwise, Tenn. R. App. P. 13(d), but questions of law are reviewed with no presumption of correctness of the Trial Court's ruling. *Bowden v. Ward*, 275 S.W.3d 913, 916 (Tenn. 2000).

The evidence does not preponderate against the Trial Court's findings of fact. Tenn. R. App. P. 13(d). In 1989, Travis Brisco was promoted by his employer and moved to Kingsport, Tennessee, where he was a site supervisor with 35 employees under his supervision. He reported directly to Tommy Merritt at the company's headquarters in Longview, Texas. When Brisco came to Kingsport, he owned a pickup truck, and was reimbursed by the company for his business expenses. This arrangement did not satisfy the company's needs, and the company then provided Brisco with a 1992 red Chevrolet Suburban, at which time he disposed of his truck. The Suburban was leased to Merico through a subsidiary leasing company, East Texas Leasing, Inc.

Brisco's employer also owned three pickup trucks for employee use. The trucks remained on company premises when not in use, and the company procedure required that any employee had to be approved by the home office and listed on an "authorized driver's list" prior to

driving a company truck. Brisco was responsible for submitting the driver's license information to the company to get this clearance. No employee was allowed to drive the company's trucks until Brisco received company authorization.

Brisco testified he was given no specific instructions, nor restrictions, regarding his use of the Suburban and that it was known and understood that he used it for both personal and business purposes. He considered it a perk of his employment and also as a replacement for his personal vehicle. He kept the keys, and it was garaged at his home, unlike the trucks which had to remain on the company's premises. He testified that at no point, either prior to or subsequent to the accident, was he told that his wife was not permitted to drive the Suburban.

On the date of the accident, Brisco and his wife , Lara Lynn, and other passengers traveled in the red 1992 Suburban to Roanoke, Virginia, to attend a softball tournament in which a company-sponsored team was participating. It is not disputed that the trip was a business-related marketing function. After the party arrived at their motel, they decided to get some food and, as Travis Brisco has been drinking, he asked his wife to drive the Suburban and while en route the accident occurred. The only sharply disputed evidence is whether the company had instructed Brisco not to allow anyone to drive the Suburban until they had followed the procedure as applied to the trucks, for getting approval to drive, and whether the company knew that Lara had driven the Suburban. The Trial Court found Merritt's testimony as to what he had advised Brisco to not be credible, but expressly credited Brisco's testimony on this issue. Generally, we defer to the Trial Judge on the issues of credibility, and we accept as true the testimony of Brisco on this issue.

The insurance policy at issue states that in addition to the named insured (Merico Abatement Contractors, Inc., by policy endorsement) "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow . . ." is an insured under the policy.

The general rule with regard to second permittees in Tennessee is that if a person who has been given permission and custody to operate a vehicle delivers the automobile to a third person unknown by or unapproved by the owner, the third person is not deemed to be driving with permission of the owner, and may not be considered an additional insured. *American Automobile Ins. Co. v. Jones,* 45 S.W.2d 52 (Tenn. 1932). *Accord: Card v. Commercial Cas. Ins. Co.*, 95 S.W.2d 1281 (Tenn. Ct. App. 1936).

Where the insured authorizes a permittee to drive a motor vehicle and specifically instructs him not to give permission to let anyone else drive it, there will be no coverage for the second permittee. *Messer v. American Mutual Liability Ins. Co.*, 241 S.W.2d 856, 857 (Tenn. 1951). The *Card* Court, while ruling there was no coverage under the facts of that case, nevertheless indicated permission could be implied by a course of conduct:

> It is not necessary that the named assured signify his "permission" in any particular manner. It is sufficient if he signifies the permission by a course of conduct, and under some circumstances mere silence may be sufficient. In this sense "implied

-3-

permission" from the named assured would be sufficient to bring a drive within the additional assured clause.

*Card*, 95 S.W.2d at 1285.

In 1964 the Tennessee Supreme Court had an occasion to revisit this issue in *Teague v. Tate*, 375 S.W.2d 840 (Tenn. 1964), and found coverage where a teenager permitted a good friend to drive a car owned by his parents, reasoning that the insurance company should indeed assume that teenage boys whose families are good friends, will "swap out" driving each other's automobile, without their parents' knowledge or permission. The Court quoted with approval 5A Am.Jur., Automobile Insurance, page 97:

> But while the majority rule is that the original permittee has no authority to delegate the permission where the initial permission is silent in such respect, this general rule is subject to qualification where the original permittee is riding with the second permittee at the time of the accident of where the second permittee, in using the automobile, is serving some purpose of the original permittee.

This Court, in *Tennessee Farmers Mut. Ins. Co. v. Moore,* 958 S.W.2d 759 (Tenn. Ct. App. 1997), extended coverage to a second permittee. In that case, Moore an auto dealership employee, was allowed to use demonstrator cars as part of her employment. Other employees were required to sign agreements which prohibited family members from driving demonstrator cars; however, Moore was never required to sign one. She was never instructed not to allow her family members to drive the vehicles. The evidence showed that her employer knew she used the cars as if they were her personal vehicles. Her daughter was in an accident in the car, having driven it outside the limits her mother permitted. This Court affirmed the Trial Court, finding that the employer had given Ms. Moore "broad permission and wide discretion as to the use of the vehicles" which also included permission to allow family members to drive the vehicles. *Id.* at 767.

The facts as found by the Trial Court and supported in the record, establish a basis for coverage under the insurance policy at issue upon the authorities discussed. Accordingly, we affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to the appellant National Union Fire Insurance Company of Pittsburgh, Pennsylvania.

_____
HERSCHEL PICKENS FRANKS, J.