IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 29, 2015 Session

## TENNESSEE FARMERS MUTUAL INSURANCE COMPANY v. SHAUN DUNLAP ET AL.

**Appeal from the Chancery Court for Sevier County**
**No. 13-6-194    Telford E. Forgety, Jr., Chancellor**

---

### No. E2015-00413-COA-R3-CV-FILED-FEBRUARY 4, 2016

---

This case presents a question regarding insurance coverage under liability and umbrella policies issued by plaintiff Tennessee Farmers Mutual Insurance Company to Jerry Dale Robertson and Sherry Ann Robertson. In July 2012, the Robertsons' house sitter and close family friend, Shaun Dunlap, used Dale Robertson's 2011 Ford Ranger pickup truck (the insured vehicle), on a personal errand to pick up a friend. On the return trip, the insured vehicle crossed the center line of the road, causing a head-on collision that killed three members of the Dembla family. Tennessee Farmers brought this declaratory judgment action seeking a judicial finding of no coverage under the policies because Dunlap was operating the insured vehicle without the permission of the insured. Defendant Kanika Dembla, the lone survivor in the Demblas' car, who had brought an underlying tort action against Dunlap, answered and argued that although Dunlap had no express permission to drive the insured vehicle, he had implied permission under the circumstances. On cross motions for summary judgment, the trial court granted summary judgment to Tennessee Farmers, finding that Dunlap did not have implied permission to drive the insured vehicle while housesitting. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Robert E. Pryor, Jr., Knoxville, Tennessee, for appellant, Kanika Dembla.

Jon M. Cope, Knoxville, Tennessee, for appellee, Tennessee Farmers Mutual Insurance Company.

1

# OPINION

## I.

During the first week of July 2012, Shaun Dunlap, age 27 at the time, was housesitting for the Robertson family at their house in Maryville. Dunlap had been a close friend of the Robertsons' daughter, Amanda, since the fifth grade. The Robertsons were on vacation in Texas, and Amanda had asked Dunlap to take care of the house and her dogs while they were away. He had done this numerous times before and was very familiar with the house, having lived there with the Robertsons for about a month in 2007 following a disagreement with his parents. Dunlap testified that he was very close to the Robertsons and considered them like family.

In the early morning hours of July 7, 2012, Dunlap received an instant message from Tyler Graham, whom he had recently met on the internet, saying that Graham was without a ride and needed to be picked up in Pigeon Forge. Dunlap decided to give him a ride, but had transmission problems with his own car and could not get it into gear. The Robertsons had left two vehicles at the house – Amanda's new Cadillac CTS and the insured vehicle. Dale Robertson testified that he bought the insured vehicle at the end of 2011 and parked it in the garage, that he did not intend for anyone to regularly drive it, and that he got it with the intention of using it after he retired to transport his motorcycle. The keys to the insured vehicle were on a hook inside a kitchen cabinet. Dunlap knew where the keys were. He took the insured vehicle to Pigeon Forge. Everyone who testified agreed that no conversation had ever taken place between any of the Robertsons and Dunlap regarding the use of their vehicles. In the many years of their acquaintance, Dunlap had not driven a vehicle owned by any of the Robertsons, nor, apparently, had he ever asked to drive one. Dunlap thought it would be okay with the Robertsons for him to borrow the insured vehicle for what he thought would be a fairly brief errand. On the way back from Pigeon Forge, at about 6:30 a.m., the accident occurred on Wears Valley Road in Sevier County. Three of the four occupants of the Dembla vehicle were killed. Both Kanika Dembla and Dunlap were seriously injured.

Kanika Dembla filed a tort action against Dunlap in federal court. Subsequently, Tennessee Farmers filed this declaratory judgment action, asking the trial court to find that coverage was excluded under the policies issued to Dale and Sherry Robertson because Dunlap was operating the insured vehicle without express or implied permission. Dembla filed an answer, alleging that Dunlap had implied permission to drive the insured vehicle and therefore he was covered under the liability and umbrella policies. Dunlap did not file a response. Both sides moved for summary judgment. The trial court considered the deposition testimony of Dale, Sherry, and Amanda Robertson, and Dunlap's deposition and his statement given during his earlier examination under oath.

After a hearing, the trial court granted summary judgment to Tennessee Farmers, finding no disputed issue of material fact and finding, as a matter of law, that there was no duty to defend or indemnify Dunlap because he drove the insured vehicle without express or implied permission and was thus excluded from coverage by the terms of the policies. In its memorandum opinion incorporated into the court's final judgment, the trial court recognized that no one had argued that Dunlap had express permission and observed that it is "undisputed that . . . over all the many occasions when Shaun Dunlap had been at the Robertson house, he had never prior to this occasion driven one of their cars." Dembla timely filed a notice of appeal.

## II.

The issue on appeal is whether the trial court correctly granted summary judgment, finding no coverage as a matter of law predicated on the court's finding that Dunlap did not have implied permission to drive the insured vehicle.

## III.

Our standard of review in this summary judgment case was recently discussed by the Supreme Court:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness.
>
> \* \* \*
>
> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. . . . The nonmoving party must demonstrate the

3

existence of specific facts in the record which could lead a
rational trier of fact to find in favor of the nonmoving party.

*Rye v. Women's Care Ctr. of Memphis, MPLLC*, — S.W.3d —, 2015 WL 6457768, at
*12, *22 (Tenn., filed Oct. 26, 2015) (italics in original).  In making a determination of
whether summary judgment was correctly granted,

> [w]e must view all of the evidence in the light most favorable
> to the nonmoving party and resolve all factual inferences in
> the nonmoving party's favor.  *Martin v. Norfolk S. Ry. Co.*,
> 271 S.W.3d 76, 84 (Tenn. 2008); *Luther v. Compton*, 5
> S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd.
> of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999).  If the undisputed
> facts support only one conclusion, then the court's summary
> judgment will be upheld because the moving party was
> entitled to judgment as a matter of law.  *See White v.
> Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v.
> Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

*Wells Fargo Bank, N.A. v. Lockett*, No. E2013-02186-COA-R3-CV, 2014 WL 1673745,
at *2 (Tenn. Ct. App. E.S., filed Apr. 24, 2014).

**IV.**

The liability policy at issue specifically defines a "Covered Person" as "you or any
family member for the maintenance or use of any auto," and "[a]ny person using your
covered auto with your permission and within the scope of your permission."  The
umbrella policy similarly defines "Insured" as including "any person using, with your
permission and within the scope of your permission, an automobile."  The parties agree
that the dispositive question is whether there is evidence from which a trier of fact could
reasonably conclude that Dunlap had implied permission to drive the insured vehicle.
*See Allstate Ins. Co. v. Stewart*, No. 02A01-9111-CH-00282, 1992 WL 58502, at *1
(Tenn. Ct. App. W.S., filed Mar. 27, 1992) ("The existence of permissive use in such
situations has been held by our Supreme Court to be a question of fact, with each case to
'be considered on the facts presented.'"), quoting *Teague v. Tate*, 375 S.W.2d 840, 844
(Tenn. 1964).

In *Tennessee Farmers Mutual Insurance Company v. Moore*, 958 S.W.2d 759,
763 (Tenn. Ct. App. 1997), we observed the following applicable general rules of
construction of an insurance policy:

4

Insurance contracts are subject to the same general rules of construction and enforcement applicable to other contracts. ***McKimm v. Bell***, 790 S.W.2d 526, 527 (Tenn. 1990). In construing contracts, the words expressing the parties' intentions should be given their usual and ordinary meaning. ***Allstate Ins. Co. v. Wilson***, 856 S.W.2d 706, 709 (Tenn. App. 1992). In case of doubt as to the meaning of a term in an insurance policy, the policy language should be construed against the party who has drawn it. ***Travelers Ins. Co. v. Aetna Cas. & Sur. Co.***, 491 S.W.2d 363, 365 (Tenn. 1973). These rules of interpretation also apply to exclusions in insurance policies, which are to be construed against the insurer and in favor of the insured. ***Id.*** at 367.

The seminal case in Tennessee addressing the concept of implied permissive use is ***Card v. Commercial Casualty Insurance Company***, 95 S.W.2d 1281 (Tenn. Ct. App. 1936). In ***Card***, this Court stated:

> When the car is being driven by a person without the actual permission (either express or implied) of the named assured, then the driver is not an additional assured.
>
> \*   \*   \*
>
> It is not necessary that the named assured signify his "permission" in any particular manner. It is sufficient if he signifies the permission by a course of conduct, and under some circumstances mere silence may be sufficient. In this sense "implied permission" from the named assured would be sufficient to bring a driver within the additional assured clause.
>
> But such "implied permission" must be the act or conduct of the named assured. It must amount to an intended selection of the person to operate the car. No implied permission can arise merely because a [person] obtained possession of the car, without the knowledge of the named assured, regardless of what permission was given by other persons. Of course, the named assured could transmit his permission through an agent or in any other manner. The essential point is whether

5

the named assured exercises his personal discretion and grants his own permission to the particular person.

*Id.* at 1284, 1285; *accord* ***Schultz v. Tenn. Farmers Mut. Ins. Co.***, 404 S.W.2d 480, 483 (Tenn. 1966) (quoting with approval the above language from ***Card***); ***Progressive Cas. Ins. Co. v. Chapin***, 243 S.W.3d 553, 559 (Tenn. Ct. App. 2007).

In the present case, Dembla argues that the course of conduct between Dunlap and the Robertsons establishes that he had implied permission to take and drive the insured vehicle. She points to the undisputed facts that Dunlap was a close family friend, that he had lived with the Robertsons for a month in 2007 and was treated as a member of the family, that he had generally unrestricted free access to the house and its contents while housesitting, and was provided with a key, garage door opener, and the security alarm code to the house. Dunlap testified that although there had never been a conversation about driving the Robertsons' vehicles, he thought he had permission to do so.

In 2012, Dale and Sherry Robertson were living in Texas because of Mr. Robertson's employment. Amanda Robertson was living in the Maryville house, which Mrs. Robertson regularly visited. It is undisputed that Dunlap never drove, or asked to drive, any of the Robertsons' vehicles before the accident. Dunlap testified that he had seen Mrs. Robertson drive the insured vehicle once, and he was not aware of any other occasion when someone else drove it. Dale Robertson testified unequivocally that Dunlap did not have permission to drive the insured vehicle and that he had a clearly communicated rule that no one was to drive his children's vehicles[1] other than the children. Regarding the insured vehicle, Dale Robertson further testified as follows:

> Q: What was the purpose of keeping the Ford Ranger at the [Maryville] residence in 2012?
>
> A: Well, I bought it for retirement, which was supposed to happen this year, to pull my motorcycle trailer with, and so I just bought it and – in fact, we bought it on [December] 29th, and I flew out the next day.
>
> Q: Okay. Other than the day you bought it, had it been driven prior to July of 2012?
>
> A: I had never driven it. I think my wife drove it to see her parents one time in early January, and that's all I know.

---

[1] Mr. Robertson has multiple children.

Q: Okay. Had any of your children ever driven it?

A: No.

In fact, the Robertsons had let the license tag expire for the insured vehicle, and so it had an expired tag when Dunlap took it, although no one was aware of this until after the accident.

Amanda Robertson was the one who asked her friend Dunlap to housesit while the family was on vacation. Dale and Sherry Robertson were aware that Dunlap was housesitting, had no problem or concern with it, and agreed that they trusted him to watch over the property. The parties generally agreed that Dunlap's primary duties were to take care of the two dogs and collect the mail. Amanda testified that Dunlap did not have permission to drive her vehicle, and there was no evidence that Amanda and Dunlap had ever shared or swapped or drove each other's vehicle. Dunlap testified that Amanda told him, "my house is your house," and to "use whatever you need." Amanda agreed that she told him "my house is your house" and to make himself at home, but did not remember telling him to use whatever he needed. Dembla argues that Amanda gave Dunlap permission to use the insured vehicle by these statements. Amanda disagreed, and both she and her parents testified that Dunlap's control and possession of the premises while they were away did not extend to the use of either vehicle they had left there.

Tennessee courts have addressed the issue of whether a second permittee is covered by an insurance policy on a number of occasions. In *Chapin*, we stated:

> As a general rule, a second permittee is not covered under a motor vehicle insurance policy unless the second permittee had the permission of the named insured to operate the covered vehicle. *Schultz v. Tennessee Farmers Mut. Ins. Co.*, 218 Tenn. 465, 404 S.W.2d 480, 482 (1966). . . . [A] second permittee is clearly not covered where the named insured "specifically instructs" the first permittee not to let anyone else drive the covered vehicle, or where the first permittee gives the covered vehicle to another person against the owner's instructions. *Schultz*, 404 S.W.2d at 483 (citing *Messer v. American Mut. Liability Ins. Co.*, 193 Tenn. 19, 241 S.W.2d 856 (1951)). Moreover, there is no coverage "even where the named insured gives the first permittee unqualified dominion over the [covered vehicle], unless some

7

other circumstances appear." *Id*. (citing *Card*, 20 Tenn.App. 132, 95 S.W.2d 1281).

243 S.W.3d at 559 (second set of brackets in original). Applying these principles, and addressing an argument somewhat similar to Dembla's in the present case, we concluded:

> [I]t is undisputed that Mr. Chapin gave his son, the first permittee, carte blanche to use the motorcycle. Mr. Chapin placed no restrictions on Doug's use of the motorcycle and did not tell Doug not to allow others to drive the motorcycle. Thus, Doug clearly had unqualified dominion over his father's motorcycle. There is, however, no evidence indicating that Mr. Chapin was aware that Doug had allowed others to drive the motorcycle before the March 23, 2000 accident; indeed Doug testified that he had never done so. The record reflects that, on the day of the accident, Mr. Chapin barely knew Samuels [the second permittee], if at all, and was not aware that Doug was going to drive the motorcycle to Samuels' home.
>
> The GAL argues that the "course of conduct" between Mr. Chapin and his son Doug regarding Doug's unrestricted use of and access to his father's home, pool, and refrigerator sufficiently supports the trial court's finding of coverage. The evidence showed that Doug regularly brought friends to Mr. Chapin's home and allowed them to use the pool and eat out of the refrigerator, and that Mr. Chapin was aware of it. The GAL argues that the trial court could reasonably infer from this that Mr. Chapin also acquiesced in Doug allowing friends to drive Mr. Chapin's motorcycle.
>
> Under the facts of this case, we do not think that the "course of conduct" as to Mr. Chapin's home and other amenities is sufficient to support an inference that Mr. Chapin acquiesced in Doug loaning the motorcycle to friends. As previously noted by our supreme court, "even where the named insured gives the first permittee unqualified dominion over [a covered vehicle]," coverage will not extend to a second permittee "unless some other circumstances appear." We find no such circumstances in this case. . . . [T]he evidence preponderates against the trial court's determination that Mr. Chapin's

8

> insurance policy covered Samuels for the March 23, 2000 motorcycle accident.

*Id.* at 561 (internal citation omitted).

In some cases, our courts have found coverage where a first permittee has been given broad discretion by the named insured to use the insured vehicle, and the facts of the particular case indicate the insured's knowledge of, or acquiescence in, another person's driving the vehicle. *See Dean v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. E2001-02311-COA-R3-CV, 2002 WL 1789692, at *3 (Tenn. Ct. App. E.S., filed Aug. 5, 2002); *Moore*, 958 S.W.2d at 766-67; *Stewart*, 1992 WL 58502, at *1-*2; *Nat'l Serv. Fire Ins. Co. v. Williams*, 454 S.W.2d 362, 364-65 (Tenn. Ct. App. 1969); *Teague v. Tate*, 375 S.W.2d 840, 843-44 (Tenn. 1964). As we observed in *Chapin*, each of these cases "included evidence from which a reasonable inference could be made that the owner acquiesced in the first permittee allowing others to drive the covered vehicle." 243 S.W.3d at 560 (discussing and distinguishing holdings in *Dean*, *Moore*, and *Stewart*). In cases where such evidence was not presented, Tennessee courts have found no insurance coverage. *Id.*; *see Schultz*, 404 S.W.2d at 483-84; *Card*, 95 S.W.2d at 1286; *Rains v. Sussdorff*, No. 03A01-9801-CV-00025, 1998 WL 437260, at *2 (Tenn. Ct. App. E.S., filed Aug. 4, 1998).

In this case, each link in the chain of potential facts that could support a finding of coverage under the terms of the policies is missing or broken. There is no evidence that would remove this case from the scope of the general rule set forth by the Supreme Court that "a second permittee is not covered under a motor vehicle insurance policy unless the second permittee had the permission *of the named insured* to operate the covered vehicle." *Schultz*, 404 S.W.2d at 482 (emphasis added). Amanda Robertson is not a named insured. Construing Dale Robertson's testimony in the light most favorable to Dembla, he gave no express permission, nor any suggestion supporting an inference of implied permission. There is no course of conduct or historical pattern of Dunlap's prior use of any Robertson vehicle that would give rise to an inference of knowledge and tacit acquiescence to such use. The evidence, including the Robertsons' testimony and the fact that they let the vehicle license tag expire, suggests that they intended for no one to drive it at the time that Dunlap took it. Second, even assuming Amanda is a "first permittee," her statements to Dunlap that "my house is your house," "make yourself at home," and "use whatever you need," cannot reasonably be interpreted under the circumstances as including permission to use her parents' insured vehicle.

Dembla relies on this Court's opinion in *State Farm Mut. Auto. Ins. Co. v. Hafley*, No. 1388, 1991 WL 46696 (Tenn. Ct. App. E.S., filed Apr. 8, 1991). *Hafley* has similar facts in that it involved a house sitter, Dyer, who took a car from the house of the

insured, Hafley, and had an accident. We found that Dyer was covered under his mother's insurance policy because Dyer had implied permission to use the car, reasoning that "Hafley intended for Dyer to protect his vehicles as well as his house" and that Dyer "would have been expected to take whatever steps were necessary to protect the property, including driving the vehicles, if necessary." 1991 WL 46696, at *3. This conclusion was in part supported by Hafley's history of giving Dyer express permission to drive his vehicles. *Id.* In the present case, it is undisputed that there is no such history of permissive use. Moreover, the *Hafley* Court held that there was no coverage under Hafley's insurance policy, because Dyer's use was outside the scope of the implied permission:

> The Hafley policy presents an altogether different problem. Under the provisions of his policy, Dyer is an insured only if he was using the Hafley vehicle within the scope of consent given by Hafley. While we have hereinbefore held that Dyer had the implied consent of Hafley to operate the vehicles located on the Hafley premises for their protection, obviously a personal excursion[] off the Hafley property and solely for Dyer's personal reasons falls outside the scope of consent impliedly granted for the protection of the vehicles.

*Id.* at *4. In the present case, both the liability and umbrella policies provide coverage only for use "with your permission *and within the scope of* your permission." (Emphasis added.) Here, Dunlap admitted that the use of the insured vehicle was a personal errand, solely for his own benefit and not for any purpose aiding the Robertsons. Thus, if we were to agree with Dembla's position that Dunlap had implied permission, as a house sitter, to take necessary steps to *protect* the vehicle under exigent circumstances – a position supported by *Hafley* – there still is no coverage here because Dunlap's use was not protective, but only for his convenience and benefit.

Finally, in related litigation arising from the facts of this case, the U.S. District Court for the Eastern District of Tennessee addressed a similar question of whether Dunlap was covered under his parents' liability insurance policy. *State Farm Mut. Auto. Ins. Co. v. Dunlap*, No. 3:13-CV-23-HBG, 2014 WL 3052055 (E.D. Tenn., filed July 3, 2014). The dispositive issue was whether Dunlap was in lawful possession of the insured vehicle at the time of the accident. *Id.* at *3. The federal district court granted State Farm summary judgment, finding no coverage because he was not in lawful possession. *Id.* at *4. The Sixth Circuit Court of Appeals affirmed, specifically finding that Dunlap had no implied permission to use the insured vehicle under the circumstances. *State Farm Mut. Auto. Ins. Co. v. Dembla*, 604 F.App'x 484, 487-88 (6th Cir. 2015). These federal court opinions, while not binding, are persuasive. Considering the applicable

legal principles and facts established in the record, we are constrained to hold that there is no coverage under the policies because Dunlap had no express or implied permission to drive the insured vehicle when he took it.

## V.

The trial court's summary judgment in favor of Tennessee Farmers Mutual Insurance Company is affirmed. Costs on appeal are assessed to the appellant, Kanika Dembla.

_____
CHARLES D. SUSANO, JR., JUDGE