HERBERT MICHAEL SCHULTZ, by next friend,
Marjorie Schultz, Plaintiff in Error,

*v.*

TENNESSEE FARMERS MUTUAL INSURANCE COMPANY,
Defendant in Error.

404 S.W. 2d 480.

(*Knoxville,* September Term, 1965.)

Opinion filed June 8, 1966.

Sam F. Fowler, Jr., and Hugh S. Guthrie, Knoxville, Fowler, Rowntree & Fowler, Knoxville, of counsel, for plaintiff in error.

Andrew Johnson, Knoxville, Kramer, Dye, Greenwood, Johnson & Rayson, Knoxville, of counsel, for defendant in error.

Mr. Justice White delivered the opinion of the Court.

This is an appeal from the decision of the Circuit Court of Knox County, entered upon a stipulation of facts. The issue involves whether a second permittee has implied permission from the owner-named insured of an automobile to use that automobile on a particular occasion, and is thus covered under the omnibus clause of the automobile insurance policy.

The stipulated facts are essentially as follows:

The plaintiff, Herbert Michael Schultz, on March 15, 1964, was riding as a passenger in an automobile owned by Mrs. J. H. St.John, of Morrison, Tennessee. On said date, the automobile was involved in an accident at the intersection of Kingston Pike and Scenic Drive, in Knoxville, Tennessee, and as a result of the accident, the plaintiff sustained personal injuries and incurred medical bills in the treatment thereof in the amount of $436.00.

Mrs. St.John had the automobile insured on the date of the accident with the defendant, Tennessee Farmers Mutual Insurance Company. The policy of insurance issued her by the defendant contained a provision providing for the payment of certain medical expenses to or for persons injured while riding in the automobile "provided

the actual use of the automobile is with the permission of the named insured." Mrs. J. H. St.John was the "named insured."

Mrs. St.John had given her son, Fred St.John, permission to take her automobile to Knoxville, where he was a student at the University of Tennessee. Fred St.John had kept the vehicle in Knoxville for approximately three months during the previous school year and had again brought the automobile to Knoxville when he returned to school in September of 1963, and had kept it at school until the accident on March 15, 1964.

Fred St.John's permission to use the automobile was general in nature, and there were no specific discussions as to limitations or restrictions upon its use. There had never been any discussions between Fred St.John and his mother as to whether any person other than Fred St.John would be allowed to use the automobile while it was in Knoxville.

Fred St.John was a member of the Lambda Chi Alpha Fraternity at the University of Tennessee. On at least one prior occasion, he had loaned the automobile to Clyde William Bernard, one of his fraternity brothers. Mrs. St. John, however, never had any knowledge of such use of the automobile by any person other than her son, Fred St.John.

Clyde William Bernard had previously testified in a deposition as follows:

Q. Prior to the night of this accident had you ever used this car before?

A. Yes, sir.

Q. On many occasions?

A. Well, yeah, I guess.

Q. Would you say that you could get the car just about any time you wanted it?

A. Yes.

   * * * * * * * *

Q. Did he ever tell you that his parents consented to his lending the car out and didn't care?

A. No, he always told us to be careful, he kind of hinted that they wouldn't be happy about it if he did, but if he thought we needed it he would let us use it.

It is stipulated that if Bernard were testifying personally in this case, his testimony would be the same in this regard.

On the other hand, Fred St.John testified in this case in the General Sessions Court that it was only on rare occasions that he had ever loaned his mother's automobile to other fraternity members and that this had not been a common practice. He further testified that on one prior occasion he had loaned the automobile to Clyde William Bernard. It is stipulated that he would testify in the same manner were he again appearing in person for the trial of this case.

It is stipulated, in any event, that Mrs. St.John never had any knowledge that any person other than Fred St.John had ever used the automobile for any purpose.

On the night of March 15, 1964, Fred St.John had loaned his mother's automobile to Clyde William Bernard so that Bernard might take his girl friend home. While he was using the automobile for his own personal

enjoyment and for his own purposes, the plaintiff, Herbert Michael Schultz, was riding in the car as a guest passenger. As a result of the accident of March 15, 1964, the plaintiff sustained personal injuries and incurred medical bills as aforementioned.

Fred St.John was not riding in the automobile at the time of the accident. He had not been in the automobile at any time on that date with either Bernard or Schultz. The automobile, prior to and at the time of the accident, was not being used for any purpose of either Fred St. John or his mother, and his mother, in fact, had no knowledge whatever that the car was being used by any other person. Mrs. St.John did not know and had never met either Bernard or Schultz.

It is further stipulated that at the time of the accident the St.Johns were residents of Morrison, Tennessee; that Fred St.John was 20 years of age; that Clyde Bernard was 17 years of age, and that both boys were licensed drivers.

The sole issue for the Court to decide in this case is whether the driver of Mrs. St.John's automobile at the time of the accident had permission, either express or implied, from Mrs. St.John, to use her automobile on the night of the accident, so as to bring him within the coverage afforded by the omnibus clause of the Tennessee Farmers Mutual Insurance Company policy insuring the said automobile.

■■ This Court has met this issue before, though not with the exact same circumstances involved. Generally, in the absence of some facts showing that express or implied permission was given by the named insured to the second permittee, the second permittee is not covered

by the omnibus clause of the automobile insurance policy. *Messer v. American Mut. Liability Ins. Co.,* 193 Tenn. 19, 241 S.W.2d 856 (1951) ; *Card v. Commercial Cas. Ins. Co.,* 20 Tenn.App. 132, 95 S.W.2d 1281 (1936). Of course, if the named insured authorizes the first permittee to drive the car and specifically instructs him not to let anyone else drive it, or if the first permittee gives the car to the second permittee ''against the instructions of the owner,'' clearly the second permittee is not covered. *Messer v. American Mut. Liability Ins. Co.,* supra.

■ However, there is still no coverage even where the named insured gives the first permittee unqualified dominion over the car, unless some other circumstances appear. *Card v. Commercial Cas. Ins. Co.,* supra. From the *Card* case, we find this statement of the law:

It is not necessary that the named assured signify his ''permission'' in any particular manner. It is sufficient if he signifies the permission by a course of conduct, and under some circumstances mere silence may be sufficient. In this sense ''implied permission'' from the named assured would be sufficient to bring a driver within the additional assured clause.

But such ''implied permission'' must be the act or conduct of the named assured. It must amount to an intended selection of the person to operate the car. No implied permission can arise merely because a man obtained possession of the car, without the knowledge of the named assured, regardless of what permission was given by other persons. Of course, the named assured could transmit his permission through an agent or in any other manner. The essential point is whether the named assured exercises his personal discretion

and grants his own permission to the particular person. 20 Tenn.App. at 138, 95 S.W.2d at 1285.

One good example of a circumstance showing implied permission is where the automobile is in the exclusive use of the named insured's daughter, who gives a garage repairman permission to drive it. It could be assumed that the named insured would know that somewhere, sometime in the course of that general use in order to make full use of the car it would become necessary for her daughter to have the car repaired and as an incident thereto it would normally be temporarily delivered into the possession of the repairman and very likely operated for short distances by such repairman. *Pollard v. Safeco Ins. Co.,* 52 Tenn.App. 583, 376 S.W.2d 730 (1963). Another good example of implied permission is where an elderly lady, who owned the car and was the named insured, but whose brother had almost exclusive control of the car, knew that a second permittee was using the car and knew that he often used it on his own business. *Howell v. Accident and Cas. Ins. Co.,* 32 Tenn.App. 83, 221 S.W.2d 901 (1949).

Plaintiff in error asserts that the recent case of *Teague v. Tate,* 213 Tenn. 269, 375 S.W.2d 840 (1964), changes the law in Tennessee with respect to coverage of a second permittee under the omnibus clause. That case held that where teenage boys divided up on the driving, that is, one drove while the original permittee was riding in the car, the second permittee was held to be using the car with the implied permission of the named insured. This case is of note because it stands for the proposition that each case is to be decided on its own facts. It does not, however, change the law in Tennessee with respect to

such circumstances as are in the instant case. In the *Teague* case it might be said that the second permittee was using the automobile on the business of the first permittee and was, therefore, his agent, rather than his bailee. Also, the families of the two boys were friends of long standing. Under these circumstances it can readily be seen that there was implied permission from the named insured to the second permittee.

Plaintiff in Error also relies on the case of *Carr v. American Universal Ins. Co.*, 341 F.2d 220 (6th Cir.1965), which held that there was coverage under facts similar to those of the instant case. The *Carr* case was applying the substantive law of Florida; however, Florida had no cases on this point, so the Court of Appeals cited the *Teague* case as authority that would permit recovery in cases of this type. Specifically, the Court of Appeals held that there was substantial evidence to support the finding of fact by the district judge that the father gave "implied authority" to his son to use the vehicle as his own and to "delegate permission of the name insured to persons of the first permittee's selection." This Court, of course, is not bound by this decision of the Sixth Circuit Court of Appeals. To the contrary, we do not think the *Teague* case is authority for recovery in the case here.

█ Mrs. St.John did not know Clyde William Bernard, and did not know that her son was allowing the automobile to be driven by third parties. The car was not being used on the business of Fred St.John or Mrs. St. John. Admittedly Fred St.John had complete dominion over the automobile, but we do not think that our law permits the conclusion from this fact alone, that Mrs. St.John's giving her son complete dominion over the

automobile thereby gave anyone else implied permission to use it. "The insurer has a right to assume that the risk he undertakes will not be enlarged." *American Automobile Ins. Co. v. Jones,* 163 Tenn. 605, 608, 45 S. W.2d 52, 53 (1932).

Cases from other jurisdictions support the conclusion we here reach. *M.F.A. Mutual Ins. Co. v. Alexander,* 361 S.W.2d 171 (Mo.App. 1962); *Allstate Ins. Co. v. Hodson,* 92 N.H. 233, 29 A.2d 782 (1942); *Duff v. Alliance Mut. Cas. Co.* 296 F.2d 506 (10th Cir.1961) (applying Oklahoma law); *Volk v. Cacchione,* 395 Pa. 636, 150 A.2d 849 (1959); *Globe Indem. Co. v. French,* 382 S.W.2d 771 (Tex. Civ. 1964); *Hunton v. McCarvel,* 65 Wash.2d 242, 396 P.2d 639 (1964).

In *Hunton v. McCarvel,* supra, the son of the named insured, while away at college, allowed his roommate to use the car. The father said that he had no knowledge that others were using the car, and yet he had given the son the car without any restrictions as to its use. It was held that the omnibus clause did not cover this second permittee.

In *Globe Indemnity Co. v. French,* supra, one student loaned another student his car, knowing that the other student was double-dating with still a third student. The insurance was in the name of the first student's father. It was held that the third student was not within the coverage of the omnibus clause since,

> There had been no course of conduct or relation between them [named insured and second permittee] to indicate mutual acquiescence and no usage or practice of the parties over a period of time preceding the day upon which the insured automobile was being used.

In *Allstate Ins. Co. v. Hodson,* supra, it was held that the simple relationship of father and son does not imply the permission for the son to let another person drive the car.

██ ██ Plaintiff in error argues that the financial responsibility law of this State, specifically T.C.A. sec. 59-1223(b)(2), changes the law of this State as declared in the *Card* and *Messer* cases, supra, and requires coverage of the second permittee. The financial responsibility laws of this State are concerned with the ability of an automobile driver to pay for bodily injury and property damage for which he may be legally liable. Essentially, the financial responsibility laws protect the public from the negligence of a user of the roads and highways. In the instant automobile insurance policy this is set out as a distinct coverage. In another separate and distinct coverage, medical payments are given to one injured while occupying the insured automobile provided the automobile is being used by the insured or someone with the insured's permission.

██ The insured does not have to be "legally liable" for the injured person to recover under this provision. This is the coverage which plaintiff in error seeks in the instant case, and the financial responsibility laws of this State have no application whatsoever to this separate and distinct provision in the automobile insurance policy.

Because the medical payments coverage is distinct from the liability coverage of the insurance policy, plaintiff in error's allegation that the insurance company is estopped to deny coverage since it failed to notify the Department of Safety of its denial of coverage is also without merit.

█ For the foregoing reasons, we think the trial judge was correct in his decision and we, therefore, affirm at the cost of plaintiff in error.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.