IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 20, 2007 Session

## PROGRESSIVE CASUALTY INSURANCE CO.
v.
## HOWARD D. CHAPIN and ARTHUR BLAIR SAMUELS
And
## SABRINA D. BALL, as GUARDIAN AD LITEM for NATASCHA BOUCHARD

An Appeal from the Circuit Court for Shelby County
No. CT-005992-01   Rita L. Stotts, Judge

No. W2006-00531-COA-R3-CV - Filed July 5, 2007

This is an insurance case. The plaintiff insurer issued a policy of insurance for a motorcycle. The named insured kept the motorcycle at his home, and allowed his adult son unrestricted access to his home and the motorcycle. The adult son borrowed the motorcycle and drove it to a friend's house. While there, the adult son let the friend take his minor stepdaughter for a ride on the motorcycle. The friend lost control of the motorcycle and the stepdaughter was injured. The accident prompted the stepdaughter's biological father to file a petition against his daughter's mother in chancery court for a change of custody. During the custody dispute, the chancery court appointed both a guardian ad litem and an attorney ad litem for the stepdaughter, and ordered the attorney ad litem to pursue any legal actions on behalf of the stepdaughter for the accident. When the attorney ad litem filed a claim on the stepdaughter's behalf with the plaintiff insurer, payment was denied. The guardian ad litem then filed a separate tort action against the friend. While the tort action was pending, the plaintiff insurer filed this declaratory judgment action against the named insured and the friend, seeking a declaration that its insurance policy did not cover the friend. The guardian ad litem intervened in this action. After a bench trial, the trial court found that the insurance policy covered the friend for the motorcycle accident, and awarded the guardian ad litem discretionary costs, which included attorney's fees for the attorney ad litem. The plaintiff insurer now appeals. We reverse the trial court's decisions on the issue of coverage and discretionary costs, and remand for further proceedings as may be necessary.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Remanded.**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., joined; W. FRANK CRAWFORD, P.J., W.S., did not participate.

Nicholas E. Bragorgos and Jonathan W. McCrary, Memphis, Tennessee, for Plaintiff/Appellant Progressive Casualty Insurance Co.

Dan Taylor, Memphis, Tennessee, for Defendant/Appellee Howard D. Chapin.

Arthur Blair Samuels, Eads, Tennessee, Defendant/Appellee, pro se.

Gary K. Smith and Karen M. Campbell, Memphis, Tennessee, for Intervener/Appellee Sabrina D. Ball, as Guardian Ad Litem for Natascha Bouchard.

## OPINION

Defendant/Appellee Howard D. Chapin ("Mr. Chapin") was the sole owner of a 1994 Suzuki Intruder motorcycle. Plaintiff/Appellant Progressive Casualty Insurance Co. ("Progressive") issued a policy of insurance to Mr. Chapin for the motorcycle.[1] The policy of insurance listed Mr. Chapin and his then wife, Vicki T. Chapin, as the named insureds.

Mr. Chapin kept the motorcycle at his home. He allowed his adult son, Douglas Andrew Chapin ("Doug"), to use the motorcycle whenever Mr. Chapin was not using it. Doug was not required to ask his father's permission in advance before using the motorcycle; he was free to enter Mr. Chapin's house, retrieve the motorcycle key, and take the motorcycle.

On March 23, 2000, Doug borrowed his father's motorcycle and rode it to the house of his friend, Defendant/Appellee Arthur Blair Samuels ("Samuels"). Doug and Samuels had been friends "on and off" for about twenty years. Mr. Chapin, however, did not know Samuels well.[2] On that day, Mr. Chapin was not aware that his son had borrowed the motorcycle and gone to Samuels' house.

When Doug arrived at Samuels' house, Samuels' stepdaughter, Natascha Bouchard ("Natascha"),[3] saw the motorcycle and wanted to ride on it. Doug allowed Samuels to take the motorcycle and drive his stepdaughter around the block. While en route, Samuels lost control of the motorcycle and wrecked. Natascha was injured in the accident. Prior to this incident, Doug had never lent the motorcycle to another person, and Mr. Chapin had never discussed with him whether he was permitted to lend the motorcycle to others.

---

[1]The policy of insurance issued to Mr. Chapin is entitled "Tennessee Motor Vehicle Policy." It contains a Motorcycle Coverage Endorsement that redefines the term "vehicle" to include motorcycles for purposes of coverage.

[2]In his deposition, Mr. Chapin indicated that he may have met Samuels once before the March 23, 2000 incident. At trial, however, Mr. Chapin said that he did not recall meeting or speaking to Samuels prior to March 23, 2000.

[3]At the time, Samuels was married to Kimberly Bouchard Samuels, Natascha's mother. They have since divorced.

The motorcycle accident and the resulting injury to Natascha prompted Natascha's biological father to file a petition against Natascha's mother in chancery court for an immediate change of custody for Natascha. During the ensuing custody dispute, the chancery court appointed Intervener/Appellee Sabrina D. Ball as Guardian Ad Litem ("GAL") for Natascha. At the GAL's request, the chancery court also appointed Gary K. Smith as Attorney Ad Litem ("AAL"), and directed him to investigate and pursue any legal actions on behalf of Natascha resulting from the March 23, 2000 motorcycle accident.

Pursuant to the chancery court's orders, the AAL filed an insurance claim on Natascha's behalf with Progressive. In a letter dated October 13, 2000, Progressive denied payment of the claim on the basis that Samuels did "not meet the definition of an insured driver." In light of Progressive's denial of Natascha's claim, the GAL filed a lawsuit against Samuels, alleging that Samuels negligently lost control of the motorcycle on March 23, 2000 and proximately caused Natascha's injuries. In the lawsuit, the GAL sought compensatory damages, punitive damages, and prejudgment interest.

Meanwhile, on September 27, 2001, Progressive filed the instant declaratory judgment action, naming Mr. Chapin and Samuels as defendants. In its complaint, Progressive alleged that the insurance policy issued to Mr. Chapin did not cover the claims asserted in the tort action against Samuels. Progressive asked the trial court to determine its obligations and liabilities under the policy and to specifically declare that it had no obligation to defend, indemnify, or pay damages on behalf of Samuels in the underlying tort action.

Mr. Chapin's insurance policy with Progressive provides:

## PART I - LIABILITY TO OTHERS
### INSURING AGREEMENT - BODILY INJURY

Subject to the Limits of Liability, if **you** pay a premium for **bodily injury** liability coverage, **we** will pay damages for **bodily injury** for which an insured person becomes legally responsible because of an **accident** arising out of the ownership, maintenance, or use of a **vehicle**.

\* \* \*

### ADDITIONAL DEFINITION

When used in this Part I, "**insured person**" or "**insured persons**" means:

1.  **you** or a **relative** with respect to an accident arising out of the ownership, maintenance or use of a **covered vehicle**.

2.  any person with respect to an **accident** arising out of that person's use of a **covered vehicle** with the express or implied permission of **you** or a **relative**

\* \* \*

### GENERAL DEFINITIONS

\* \* \*

12. "**Relative**" means a person residing in the same household as **you**, and related to **you** by blood, marriage or adoption, including a ward, stepchild,

or foster child. Unmarried dependent children temporarily away from home will be considered residents if:

a.     they are under the age of twenty-five (25) years; and

b.     they intend to continue to reside in **your** household. . . .

\* \* \*

16.     "**You**" and "**Your**" mean the person shown as the named insured on the **Declarations Page**, and that person's spouse if residing in the same household.

Initially, Samuels did not file a response or otherwise appear to defend against Progressive's complaint; consequently, on November 21, 2001, Progressive filed a motion for default judgment against Samuels. After a hearing on Progressive's motion, the trial court entered an order granting Progressive a default judgment against Samuels. In the order, the trial court declared that Progressive owed no obligation to defend, indemnify, or pay damages in the claim against Samuels arising from the March 23, 2000 accident.

On December 13, 2001, Samuels filed a motion for relief from judgment under Rule 60.02 of the Tennessee Rules of Civil Procedure. Samuels attached an affidavit to the motion stating that he did not receive notice of the hearing on Progressive's motion for default judgment. In the meantime, the GAL learned of Progressive's declaratory judgment action and the default judgment entered against Samuels. On January 10, 2002, the GAL filed a motion to intervene in Progressive's declaratory judgment lawsuit and asked the trial court to set aside the judgment against Samuels. The trial court, on February 25 and 28, 2002, respectively, entered orders granting the GAL's motion to intervene and setting aside its previous judgment.

Mr. Chapin, Samuels, and the GAL then filed separate answers to Progressive's complaint, denying the allegations. In their responses, Samuels and the GAL included counterclaims against Progressive seeking a declaratory judgment that Mr. Chapin's insurance policy covered Samuels, based on the terms of the policy and the doctrine of permissive use.

On March 11, 2003, Progressive filed a motion for summary judgment. In the motion, Progressive argued that Mr. Chapin's insurance policy did not cover claims related to the March 23, 2000 accident because neither a named insured nor any "relative" (a defined term in the policy) of a named insured gave express or implied permission to Samuels to use the motorcycle on that day. Samuels and the GAL filed separate responses in opposition to Progressive's motion. The GAL also filed a cross-motion for summary judgment, arguing that Samuels had implied permission to use the motorcycle on that day, based on the fact that Mr. Chapin gave his son unqualified permission to use the motorcycle, and also based on the general course of conduct between Mr. Chapin and his son.

The trial court denied Progressive's motion for summary judgment, and Progressive filed a motion for interlocutory appeal. Subsequently, the trial court heard both Progressive's motion for interlocutory appeal and the GAL's cross-motion for summary judgment. Both motions were denied and the cause was set for a bench trial. The trial was held on January 4, 2006.

At trial, Progressive contended that the determinative issue was whether Mr. Chapin gave Samuels implied permission to use the motorcycle on March 23, 2000, and maintained that Samuels could not have had implied permission because, on the day of the accident, Mr. Chapin did not know Samuels, and did not know that his son had borrowed the motorcycle and driven it to Samuels' house. In response, the AAL, representing the GAL, argued that a general course of conduct between Mr. Chapin and Doug giving Doug virtually unfettered use of his father's home and other possessions meant that Samuels had implied permission to use the motorcycle.

At the outset, the trial court heard testimony from the named insured, Mr. Chapin. Mr. Chapin testified that his son Doug often came to his home for meals or to swim and that he sometimes brought friends along with him. On occasion, Doug spent the night. According to Mr. Chapin, Doug was free to come and go from his home and did not need to call in advance or ask permission. The "open-door policy," Mr. Chapin testified, applied not only to the house and pool, but also to the motorcycle, so long as Doug did not inconvenience him.

As to the motorcycle, Mr. Chapin said that he trusted his son's judgment and that his son had broad discretion. Doug and Mr. Chapin had never discussed lending the motorcycle to other people, and Mr. Chapin thought Doug would know that it was not a "good idea." Mr. Chapin indicated that it would have been "okay" for Doug to let another person ride the motorcycle if Doug was comfortable with that person's sobriety and riding experience, but noted that he was unaware of any such instance before the day of the accident.

Doug Chapin testified as well. Doug confirmed that he had free access to his father's house and possessions, and that the only restriction on his use of the motorcycle was to be safe. Regarding the accident, Doug said that he just happened to stop by Samuels' house, and he confirmed that he did not obtain his father's permission before allowing Samuels to drive the motorcycle. He testified that it never occurred to him to ask his father's permission to do so.

Samuels was subpoenaed to appear at trial, but he failed to show. Consequently, portions of his deposition were entered into evidence.[4] Samuels testified that he did not know Mr. Chapin well, but did know that Mr. Chapin was the owner of the motorcycle. He said that, on March 23, 2000, Doug Chapin gave him permission to take Natascha for a ride on the motorcycle. Before taking Natascha for a ride, Samuels rode Mr. Chapin's motorcycle around the block once by himself.

Finally, the trial court heard testimony from Stacey Goins ("Goins"), the claims representative who wrote the October 13, 2000 denial letter on behalf of Progressive. The AAL questioned Goins about an inconsistency between the terminology in the denial letter and the insurance policy. The denial letter used the term "insured driver," which was not a defined term in the policy. Goins conceded that because neither the denial letter or the policy defined the term "insured driver," Progressive could not have made their determination of coverage based on that

---

[4]The deposition was taken in the separate tort action against Samuels.

term. Goins explained that she understood the term "insured driver" as referring to an "insured person," which was defined in the policy. That concluded the testimony.

On January 24, 2006, the trial court issued its ruling from the bench, finding that Progressive's policy of insurance provided coverage to Samuels for the March 23, 2000 accident. The oral ruling was memorialized in a final judgment and order, entered on February 8, 2006. From this order, Progressive filed a timely notice of appeal.

On March 3, 2006, the GAL filed a post-trial motion for discretionary costs pursuant to Rule 54.04 of the Tennessee Rules of Civil Procedure. The motion resulted in lengthy procedural skirmishes. Ultimately, the trial court found that the GAL was the "prevailing party" and assessed against Progressive $64,129.17 in costs, which included the fees and expenses of the AAL in the instant lawsuit.

In this appeal, Progressive raises two issues for review: (1) whether the trial court erred in finding that Mr. Chapin's insurance policy covered Samuels for the March 23, 2000 motorcycle accident, and (2) whether the trial court abused its discretion in granting the GAL's motion for discretionary costs.[5]

Because this case was tried without a jury, our standard of review is *de novo* upon the record, according a presumption of correctness to the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); **Pyburn v. Bill Heard Chevrolet**, 63 S.W.3d 351, 356 (Tenn. Ct. App. 2001) . The trial court's legal conclusions, however, are reviewed *de novo* and accorded no presumption of correctness. **Taylor v. Fezell**, 158 S.W.3d 352, 357 (Tenn. 2005).

We first address the issue of coverage. Mr. Chapin was, of course, a named insured under the insurance policy. His son Doug was not a "relative" as defined in the policy; though related by blood to Mr. Chapin, he was over twenty-five years old at the time of the accident and did not reside in Mr. Chapin's household. Rather, Doug was a first permittee to use the motorcycle owned by the named insured, Mr. Chapin; it is undisputed that Doug had Mr. Chapin's permission to use the motorcycle. Accordingly, Samuels would be considered a second permittee, since he had express permission from Doug to use the motorcycle. It is undisputed that Samuels did not have express permission from the named insured, Mr. Chapin, to use the motorcycle. The issue then becomes whether Samuels, as a second permittee, had implied permission from Mr. Chapin, the named insured, to drive the motorcycle on March 23, 2000.

As a general rule, a second permittee is not covered under a motor vehicle insurance policy unless the second permittee had the permission of the named insured to operate the covered vehicle. **Shultz v. Tennessee Farmers Mut. Ins. Co.**, 404 S.W.2d 480, 482 (Tenn. 1966). Such permission does not have to be expressly given; it may be implied:

---

[5]Samuels did not file a brief in this appeal.

It is not necessary that the named assured signify his "permission" in any particular manner. It is sufficient if he signifies the permission by a course of conduct, and under some circumstances mere silence may be sufficient. In this sense "implied permission" from the named assured would be sufficient to bring a driver within the additional assured clause.

But such "implied permission" must be the act or conduct of the named assured. It must amount to an intended selection of the person . . . . No implied permission can arise merely because a man obtained possession of the [covered vehicle], without the knowledge of the named assured, regardless of what permission was given by other persons. Of course, the named assured could transmit his permission through an agent or in any other manner. The essential point is whether the named assured exercises his personal discretion and grants his own permission to the particular person.

*Tennessee Farmers Mut. Ins. Co. v. Moore*, 958 S.W.2d 759, 766 (Tenn. Ct. App. 1997) (quoting *Card v. Commercial Cas. Ins. Co.*, 95 S.W.2d 1281, 1285 (Tenn. Ct. App. 1936)). Thus, a second permittee is clearly not covered where the named insured "specifically instructs" the first permittee not to let anyone else drive the covered vehicle, or where the first permittee gives the covered vehicle to another person against the owner's instructions. *Shultz*, 404 S.W.2d at 483 (citing *Messer v. American Mut. Liability Ins. Co.*, 241 S.W.2d 856 (Tenn. 1951)). Moreover, there is no coverage "even where the named insured gives the first permittee unqualified dominion over the [covered vehicle], unless some other circumstances appear." *Id.* (citing *Card*, 95 S.W.2d 1281).

On appeal, the parties cite to three cases in which these principles were applied. In *Allstate Insurance Co. v. Stewart*, No. 02A01-9111CH00282, 1992 WL 58502 (Tenn. Ct. App. Mar. 27, 1992), the named insureds, Elvis Ray Stewart, Sr. and his wife, Elenn Stewart, gave their son, Stewart, Jr., standing permission to use their car. *Id.* at *1. While running some errands in the car, Stewart, Jr. and his friend, Chadwick Rudd, were involved in an automobile accident. *Id.* When the accident occurred, Rudd was driving the car. *Id.* Testimony at trial indicated that Stewart, Jr., had asked Rudd to drive the car because he was tired from working all night, and that the Stewarts had instructed their son to let someone else drive the car if he ever felt unfit to drive or was in a situation in which it would be dangerous for him to drive. *Id.* at *2-3. On one prior occasion, Stewart, Sr. and Mrs. Stewart were aware that Rudd had driven the Stewarts' car and did not object. *Id.* Under those circumstances, the trial court found that Rudd as second permittee had the implied permission of the named insureds to drive the car, and this ruling was affirmed on appeal. *Id.* at *1, 3.

Five years later, in *Tennessee Farmers Mut. Ins. Co. v. Moore*, 958 S.W.2d 759 (Tenn. Ct. App. 1997), this Court again addressed the issue of implied permission. In *Moore*, the named insured, Hatcher Autoplex, provided demonstrator vehicles to some of its employees, including employee Patricia Moore. *Id.* at 761. With the exception of Moore, Hatcher Autoplex expressly instructed these employees not to allow family members to drive the demonstrator vehicles, and required them to sign a written statement to this effect. *Id.* Mrs. Moore prepared these forms for other employees, but Hatcher Autoplex did not give her similar instructions or require her to sign

one of the written statements. *Id.* at 761, 766. Mrs. Moore testified that Hatcher Autoplex was aware that she used the demonstrator vehicle as if it was her own. *Id.* at 767. One night, Mrs. Moore permitted her daughter, Stacy, to take the demonstrator vehicle to a party. *Id.* at 761. While driving that night, Stacy and two passengers were involved in an accident. *Id.* The trial court determined that the Hatcher Autoplex insurance policy covered Stacy as the second permittee. *Id.* at 763, 767. The insurance company appealed. The appellate court held that the evidence sufficiently supported the trial court's conclusion that Hatcher Autoplex gave Mrs. Moore "broad permission and wide discretion" that included permission to allow family members to drive the vehicles. *Id.* at 767. Thus, the finding of coverage for the second permittee was affirmed. *Id.*

Finally, in *Dean v. National Union Fire Ins. Co.*, No. E2001-02311-COA-R3-CV, 2002 WL 1789692 (Tenn. Ct. App. Aug. 5, 2002), the named insured, Merico Abatement Contractors, provided an employee, Travis Brisco, with a company vehicle. *Id.* at *1-2. In addition, the company owned three pickup trucks; company policy required any employee who used any of the three pickup trucks to be approved and listed on an "authorized driver's list." *Id.* at *2. Mr. Brisco was responsible for submitting driver's license information on these employees to the company for its approval, and no employee was allowed to drive a pickup truck until Mr. Brisco received company authorization. *Id.* Mr. Brisco, however, was given no specific instructions or restrictions on his use of the company vehicle. *Id.* In fact, the company vehicle had replaced Mr. Brisco's personal vehicle, which he garaged at his home. *Id.* Mr. Brisco testified that the company was aware that he used the company vehicle for personal and business purposes. *Id.* While on a business-related trip, Mr. Brisco's wife drove Mr. Brisco and some other passengers to get some food. *Id.* An accident occurred on the way. *Id.* The trial court ruled that Mrs. Brisco as a permissive user was covered under the company's insurance policy. *Id.* at *1. The insurance company appealed. Citing the *Moore* decision, this Court affirmed that ruling in the subsequent appeal. *Id.* at *3-4.

Relying on the above cases, the AAL on behalf of the GAL urges this Court to affirm the trial court's decision, noting that, in each case, the named insured gave the first permittee broad discretion to use the covered vehicle.[6] In addition, however, each case included evidence from which a reasonable inference could be made that the owner acquiesced in the first permittee allowing others to drive the covered vehicle. In *Moore*, for instance, the named insured had a procedure in place to prevent its employees from allowing family members to use its vehicles, and that procedure was not applied to Moore. The employer did not require her to sign a written statement, and it did not otherwise tell her not to allow her family members to drive the demonstrator vehicle. *Moore*, 958 S.W.2d at 766. The *Stewart* and *Dean* cases involved analogous circumstances.

In the instant case, it is undisputed that Mr. Chapin gave his son, the first permittee, carte blanche to use the motorcycle. Mr. Chapin placed no restrictions on Doug's use of the motorcycle and did not tell Doug not to allow others to drive the motorcycle. Thus, Doug clearly had unqualified dominion over his father's motorcycle. There is, however, no evidence indicating that

---

[6]Mr. Chapin submitted a brief to this Court adopting in full the arguments set forth in the brief of GAL Sabrina Ball.

Mr. Chapin was aware that Doug had allowed others to drive the motorcycle before the March 23, 2000 accident; indeed Doug testified that he had never done so. The record reflects that, on the day of the accident, Mr. Chapin barely knew Samuels, if at all, and was not aware that Doug was going to drive the motorcycle to Samuels' home.

The GAL argues that the "course of conduct" between Mr. Chapin and his son Doug regarding Doug's unrestricted use of and access to his father's home, pool, and refrigerator sufficiently supports the trial court's finding of coverage. The evidence showed that Doug regularly brought friends to Mr. Chapin's home and allowed them to use the pool and eat out of the refrigerator, and that Mr. Chapin was aware of it. The GAL argues that the trial court could reasonably infer from this that Mr. Chapin also acquiesced in Doug allowing friends to drive Mr. Chapin's motorcycle.

Under the facts of this case, we do not think that the "course of conduct" as to Mr. Chapin's home and other amenities is sufficient to support an inference that Mr. Chapin acquiesced in Doug loaning the motorcycle to friends. As previously noted by our supreme court, "even where the named insured gives the first permittee unqualified dominion over [a covered vehicle]," coverage will not extend to a second permittee "unless some other circumstances appear." ***Shultz v. Tennessee Farmers Mut. Ins. Co.***, 404 S.W.2d 480, 483 (Tenn. 1966). We find no such circumstances in this case. After a thorough review of the record, we must conclude that the evidence preponderates against the trial court's determination that Mr. Chapin's insurance policy covered Samuels for the March 23, 2000 motorcycle accident.[7] The trial court's decision on this issue is reversed.

We turn now to the issue of discretionary costs. Rule 54.04(2) of the Tennessee Rules of Civil Procedure empowers courts to award certain costs and expenses to the party that ultimately prevails at trial. ***Scholz v. S.B. Int'l, Inc.***, 40 S.W.3d 78, 84 (Tenn. Ct. App. 2000). An award of costs falls within the reasonable discretion of the trial court, ***Long v. Long***, 957 S.W.2d 825, 833-34 (Tenn. Ct. App. 1997), and the trial court may allocate such costs "between the litigants as . . . the equities demand." ***Perdue v. Green Branch Min. Co.***, 837 S.W.2d 56, 60 (Tenn. 1992) (citing T.C.A. § 20-12-119). In reviewing a trial court's decision to assess costs, this Court employs an abuse of discretion standard. ***Id.***; ***see also Mass. Mut. Life Ins. Co. v. Jefferson***, 104 S.W.3d 13, 35 (Tenn. Ct. App. 2002).

In this case, the trial court found the GAL was the "prevailing party" and ordered an award of $64,129.17 in costs and expenses against Progressive. These costs and expenses included the attorney's fees for the AAL. Under the holding on appeal, the GAL is no longer the "prevailing party." ***See McIntyre v. Traughber***, 884 S.W.2d 134, 138 (Tenn. Ct. App. 1994) ("In order to

---

[7]In her brief, the AAL argues in the alternative that the language in the insurance policy is ambiguous and that it should be construed against Progressive, the drafting party. She relies on the testimony of claims representative Stacey Goins regarding the inconsistency in the October 13, 2000 denial letter and the policy of insurance, as well as the fact that the term "implied permission" is not defined in the policy. We decline to adopt this argument.

prevail, a party must succeed on a significant issue in the litigation that achieves some of the benefit the party sought when it brought the suit."). The GAL urges this Court to nevertheless require Progressive to pay the discretionary costs, including the AAL's attorney's fees, even if we find that Mr. Chapin's insurance policy does not cover Samuels under these circumstances. Such an order, however, would be inequitable, and we decline to do so. Therefore, the trial court's award of discretionary costs against Progressive is reversed. Since the appointment of the GAL and the AAL originated in the chancery court with jurisdiction over the custody issue regarding Natascha, we recognize that further proceedings concerning the fees of the GAL and the AAL may be needed, and we remand for further proceedings if necessary.

The judgment of the of the trial court is reversed, and the cause is remanded for further proceedings not inconsistent with this Opinion. Costs of this appeal are to be taxed to Intervener/Appellee Sabrina D. Ball, as Guardian Ad Litem for Natascha Bouchard, Defendant/Appellee Howard D. Chapin, and Defendant/Appellee Arthur Blair Samuels, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE