# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 1, 2011 Session

## CAROL D. DAVIS v. KOLO LYNN DAVIS, ET AL.

**Appeal from the Chancery Court for Bradley County**
**No. 93-293    Jerri S. Bryant, Chancellor**

---

**No. E2010-00958-COA-R3-CV-FILED-AUGUST 30, 2011**

---

In this post-divorce case, Kolo Lynn Davis ("Husband") appeals the trial court's classification of an agreement to maintain health insurance through his company, Cleveland Building Materials ("CBM"), as alimony in futuro. Husband and Carol D. Davis ("Wife") were married in 1964 and divorced in 1995. Pursuant to the mutual agreement of the parties, Wife was given the option of maintaining health insurance through CBM. In furtherance of this agreement, Wife was given a paid position as a non-voting member of CBM's board of directors, which allowed her to maintain health insurance through CBM. Wife was tasked with reimbursing CBM for all costs associated with the health insurance coverage. Husband later sold CBM to Kolo Lynn Davis, II ("Son"). Son, through CBM, continued to pay Wife for her services as a board member. In 2005, CBM discontinued its group health insurance, thereby removing Wife from the plan and ceased paying Wife for her services as a board member. Wife filed suit, naming Husband and CBM as parties. Following a hearing, the trial court classified the payments from CBM as alimony in futuro, held Husband personally liable for CBM's non-payment, and instructed Husband to continue with future payments pursuant to the agreement. Husband appeals. We reverse the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

H. Franklin Chancey, Cleveland, Tennessee, for the appellant, Kolo Lynn Davis.

Eric S. Armstrong, Cleveland, Tennessee, for the appellee, Carol D. Davis.

Shari Tayloe Young, Cleveland, Tennessee, for the appellee, Cleveland Building Materials, Inc.

## OPINION

## I. BACKGROUND

Pursuant to the mutual agreement of the parties that was entered April 23, 1996, nunc pro tunc September 11, 1995, Husband and Wife agreed to the division of various properties, vehicles, and other items. Wife obtained the property at which Century 21, Davis Real Estate was operating. Wife agreed to lease the property for three years to Husband, who would, in turn, pay her each month. In addition, Husband agreed to give Wife a lump-sum cash payment of $50,000 and to pay her $540,000 in equal installments of $3,000 per month for 180 months. The $540,000 payment was secured by a trust deed in which Husband pledged property equal to the unpaid amount, with the understanding that as Husband paid the monthly amounts, the security interest in the property would correspondingly decrease. The parties crafted the portion of the agreement at issue in this case, which provided,

> FURTHER ORDERED that [Wife], shall be designated a non-voting member of the Board of Directors of [CBM] and for her services shall receive the sum of $342.00 per month, said amount to be fixed and not subject to increase or decrease. [Wife] may, at her cost, maintain health insurance coverage through [CBM's] group policy provided that she reimburses [CBM] on a monthly basis, any amounts which [CBM] incurs by way of premium for her coverage. In the event [Wife] elects not to maintain her health insurance through [CBM], she shall forfeit her position as a non-voting director as well as all benefits therefrom. Nothing herein contained will prevent [Husband] from selling or disposing of his stock or the business interest in [CBM], nor taking any other action, including liquidation of said company.

Husband and Wife also agreed that "neither party shall be responsible for the payment of spousal support to the opposite party."

The health care portion of the agreement was crafted because at the time of the divorce, Wife suffered from lupus and related health care problems that necessitated her maintaining health insurance coverage. The monthly health insurance premiums exceeded the $342 that Wife received from CBM. Therefore, after Wife received her payment from

CBM in the amount of $342, she would then send the total monthly premium to CBM's group health insurance carrier, Guardian Insurance Company ("GIC").[1]

This arrangement continued until early 2005, when CBM informed Wife that she had been released from the group health insurance because GIC was no longer providing health insurance coverage. Wife then obtained health insurance through a policy available to her husband, Joseph Richard Schultz. When Mr. Schultz retired in 2006, Wife remained covered under COBRA until July 31, 2008. Wife attempted to obtain health insurance through other avenues but was denied full coverage because of her pre-existing medical conditions. Wife filed suit on February 6, 2008, naming Husband and CBM as parties.

At the hearing held on February 24, 2010, Wife testified that "before her health insurance coverage was discontinued, she made her premium payments in a timely manner." She said that she did not know that Husband sold CBM to Son and that she continued to receive the monthly payments after Husband sold CBM. She considered the monthly premium payments to be Husband's obligation.

Husband testified that at the time of the divorce, he was "president and sole stockholder" of CBM and that following the divorce, he sold 51 percent of his interest in CBM to Son on October 14, 1999. In 2003, he sold the remaining 49 percent of his interest in CBM to Son. After he sold 51 percent of his interest, he "exercised no control over the business functions of [CBM]." He said that CBM kept Wife insured on the group health insurance plan and made the premium payments. He said that he considered the monthly payments to be CBM's obligation, not his, and that his obligation was to pay Wife $3,000 per month for 180 months.

Son testified that Husband did not play an active role in the company after Husband sold him 51 percent of CBM. He said that CBM continued to pay Wife until March 2005, when CBM stopped carrying health insurance through GIC. He said that he told Husband that CBM would no longer pay Wife and that Husband needed to pay Wife because it was Husband's obligation, not CBM's. He explained that CBM had "struggled through a business downturn" and that he did not feel comfortable "being stuck in the middle between his parents."

---

[1] Approximately one year after the entry of the judgment evidencing the agreement between the parties, Wife filed suit, alleging that Husband had failed to make his March and April $3,000 monthly payments. Apparently, Husband had been off-setting the difference between the $342 and the total health insurance premium payment that Wife had failed to make. Husband and Wife resolved the dispute amicably, and a judgment was entered evidencing the compromise and settlement.

Schansa Lee Davis, Son's wife, testified that she "managed the books" for CBM. She said that CBM paid Wife until March 2005, when it learned that GIC would no longer provide health insurance in the local area. She explained that the "cost of obtaining other health insurance had become cost prohibitive" for CBM and that she informed Wife of the changes.

Following the hearing, the trial court found that the monthly payment of $342 was alimony in futuro "because it was a specific monthly payment that had no set termination date." The court also found that Husband, as president and sole owner of CBM, had the authority to bind CBM to this obligation and that because Husband "did not sign the Final Decree in his capacity as President and sole owner of [CBM], he is personally responsible for the nonpayment of this sum from March, 2005 through February, 2010 and a judgment for $20,520.00 should enter accordingly." The court further found that Husband was "responsible for the continuing payment of the sum of $342.00 per month, due and payable a the beginning [o]f each month pursuant to the terms of the final decree of divorce."

## II. ISSUES

We consolidate and restate the issues raised by Husband as follows:

A. Whether the trial court erred in classifying the payments from CBM as alimony in futuro.

B. Whether the trial court erred in holding Husband personally liable for CBM's non-payment and all future payments.

C. Whether the trial court erred in concluding that Wife was entitled to alimony in futuro in the form of health insurance coverage when Wife had remarried and obtained insurance through her current spouse.

Wife also raised an issue for our consideration:

D. Whether the trial court should have awarded her attorney fees because she was the prevailing party at trial.

## III. STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review

-4-

with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

## IV. DISCUSSION

### A.

Husband and Wife contend that the trial court erred in classifying the monthly payments from CBM as a form of alimony in futuro. Husband relates that their agreement regarding health insurance was not a personal liability but was a good faith concession to provide Wife with the option of obtaining insurance through CBM in exchange for her services as a non-voting board member. Wife relates that the payments, unlike alimony in futuro, could not be modified and were not subject to end upon her death or remarriage. CBM responds that the trial court did not err in classifying the payments as alimony in futuro because even though the payments were funneled through CBM, the agreement was for Husband to provide Wife with an avenue by which to maintain health insurance.

"Alimony" is defined, in pertinent part, by Black's Law Dictionary, 9th ed., as

> [a] court-ordered allowance that one spouse pays to the other spouse for maintenance and support . . . after they are divorced. Alimony is distinct from a property settlement.

Tennessee recognizes four different types of alimony: rehabilitative alimony, transitional alimony, alimony in futuro, and alimony in solido. The type of alimony that is arguably at issue in this case, alimony in futuro, is a long term form of spousal support that is typically awarded when a spouse is economically disadvantaged and rehabilitation is not feasible,

> meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(f)(1). Awards of alimony in futuro "remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A).

We must first note that the court had the authority to order Husband "to pay the premiums for insurance insuring the health care costs of the other party, in whole or in part, for such duration as the court deems appropriate." Tenn. Code Ann. § 36-5-121(k). In contrast to an award of alimony in futuro or the court's direct order to pay health insurance premiums, the agreement at issue here was created to provide Wife with the *option* of paying for health insurance through CBM because of her pre-existing medical conditions. Wife was tasked with reimbursing CBM for the deficit between the monthly payment she received for her services and the total monthly premium amount. While this portion of the agreement had no set termination date, the agreement was terminable by Wife at any time and by Husband upon the sale of his stock or business interest or if the company was liquidated. Wife could elect to obtain health care coverage elsewhere, thereby forfeiting her position as a non-voting board member and the compensation for that position. Likewise, Husband maintained his right to sell his interest in CBM or liquidate CBM, thereby removing Wife from CBM's health insurance coverage and her position as a non-voting board member. The parties agreed that the amount of the payments made to Wife by CBM were not subject to change by either party. We believe that the agreement between the parties is more aptly characterized as a good faith concession on the part of Husband to provide Wife with an avenue in which to seek health insurance for the time being and is properly designated as a part of the parties' division of marital property. When Husband sold his interest in the company, Husband was no longer tasked with providing Wife with an avenue in which to seek health insurance. Accordingly, we conclude that the trial court erred in classifying this agreement as alimony in futuro and holding Husband liable for CBM's non-payment and all future payments.

B.

Husband contends that he was not personally liable for the $342 monthly payments because CBM ratified his agreement to provide Wife with a position on the board and the commensurate compensation. Wife responds that she may collect from either Husband or CBM because CBM ratified Husband's agreement with Wife. CBM responds that it was not liable for the non-payment or any future payments because the agreement was between Husband and Wife, not CBM and Wife. CBM relates that Husband did not bind the company because Husband did not sign the agreement in his corporate capacity and that CBM, through Son, continued the payments to Wife out of respect for the familial relationship between Son and Wife, not as an act of ratification.

-6-

While Husband, as president and owner of CBM, had the authority to bind CBM to an employment contract with Wife, the agreement before us cannot be characterized as such. Husband and Wife crafted the agreement to equitably divide the marital estate while ensuring that Wife was able to maintain health insurance for the time being because of her medical condition. Following the divorce, Wife remarried and had other health insurance options available to her. Moreover, the agreement was not of a binding nature because it was merely a good faith concession to provide the option of health insurance that was terminable by Wife without limitation and terminable by Husband under certain circumstances. Neither Husband nor CBM could be tasked with indefinitely providing Wife with health insurance because the agreement itself belied this result. Accordingly, we conclude that Wife cannot recover payments from CBM.

C.

Having concluded that Husband's good faith concession to provide an avenue in which to provide health insurance for Wife was not alimony in futuro, we will not address the issue as to whether the trial court erred in concluding that Wife was entitled to alimony in futuro in the form of health insurance coverage when Wife had remarried and obtained insurance through her current spouse.

D.

Wife contends that as the prevailing party at trial, the trial court should have awarded her attorney fees. "A party who prevails in the trial court but loses on appeal is no longer the prevailing party." *Donald F. Bradford v. James W. Sell*, No. E2008-02424-COA-R3-CV, 2009 WL 3103814, at *7 (Tenn. Ct. App. Sept. 29, 2009) (citing *Progressive Casualty Ins. Co. v. Chapin*, 243 S.W.3d 553, 562 (Tenn. Ct. App. 2007)). If Wife had been awarded attorney fees at trial, reversal of that award on appeal would be appropriate. Id. Accordingly, we uphold the trial court's denial of attorney fees.

## V. CONCLUSION

The judgment of the trial court is reversed, and the cause is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellee, Carol D. Davis. Wife has asked this court to award her appellate attorney fees. Wife was not the prevailing party on appeal; therefore, we will not award her appellate attorney fees. Id.

_____
JOHN W. McCLARTY, JUDGE